## LEACH v. WILLIAMS AND ANOTHER.

8 759
f128 682

1. Whether an attorney at law, charged with the collection of a debt be authorized to receive money upon an execution of a stranger under an agreement with him, that the execution shall remain open for his benefit, is not material, if the money thus received is paid over to the plaintiff in the judgment; in such case the party thus paying the money shall be entitled to an exetion in their names for his reimbursement.

2. In a contest between execution creditors, it appeared that an original, alias, and pluries fi. fa. had regularly issued upon the defendant's judgment, the last of which was placed in the sheriff's hands, before the original fi. fa. in favor of the plaintiff issued: Held, that no question could arise as to the dormancy of the defendant's first fi. fa. as between him and the plaintiff—as his subsequent executions, which were regularly proceeded in, were entitled to priority of the plaintiff's.

3. Where goods levied on are removed by the defendant, or by his permission or connivance, or are delivered to him under a forthcoming bond, which he forfeits, the plaintiff may have a new fi. fa.

4. The sheriff should levy a fi. fa. on a sufficiency of the defendant's property, if to be found, to satisfy it; but the mere omission of the sheriff to do his duty in this respect, will not postpone an elder to a junior fi. fa. at the suit of another party.

5. The remark of the plaintiff in a fi. fa. to the sheriff, that he would do nothing that could affect his lien, nor must he (the sheriff,) do any thing that would cause him to lose it, but if he failed to make the money by a sale of property, he would not rule him, will not make the fi. fa. dormant and inoperative, if the sheriff failed to proceed thereon, unless the plaintiff intended to assent to, and approve the delay, with the view of aiding the defendants, or protecting their property.

Writ of Error to the Circuit Court of Perry.

This was a proceeding under the statute, suggesting that a writ of *fieri facias* had been issued from the Circuit Court of Perry, at the suit of the plaintiff in error, against the goods, &c. of McLaughlin & Townes, and placed in the hands of the defendant, Williams, as sheriff of that county, for execution, who failed to make the money thereon three days previous to the term of the Court when the same was returnable, although the money could have been made by due diligence. The plaintiff made a special statement of the facts, of which his right to recover is predicated; from this it appears that the liability of the sheriff depends upon the fact, whether the plaintiff's *fi. fa.* or one in favor of Messrs. Dunn, McIlvain & Brownlee, (of which John Lockhart claims to be assignee,) is entitled to priority. Notice was given to Lockhart, of the proceeding against the sheriff, and he was permitted to come in and unite in making defence against the suggestion. By consent of parties, the facts and law of the case were submitted to the Court, and judgment was rendered in favor of the defendants, and against the plaintiff for costs.

The facts of the case are certified, on which the judgment of the Court is founded, and the plaintiffs exception thereto. It is stated, that the plaintiff produced the several writs of *fi. fa.* issued on his judgment; the first of which went into the hands of the defendant, Williams, as the sheriff of Perry, on the 14th December, 1843, and on the 17th January, 1844, was levied on three slaves, the property of the defendant, McLaughlin. A replevy bond was executed for the delivery of these slaves, on the first Monday of February thereafter, which was forfeited, and so certified on the 5th February. On the 12th of the same month, a second *fi. fa.* issued on the forfeited bond, and was returned "no property found," on the 3d May, 1844. The slaves which had been levied on, were seized and sold under a *fi. fa.* in favor of Dunn, McIlvain & Brownlee, against Hopkins, McLaughlin, Lea, Moore, McKinney, and Williams, and the proceeds appropriated to its payment. On the 8th of June, 1844, the plaintiff sued out a third execution, which was levied upon the slaves, the proceeds of which are in dispute. This *fi. fa.* and that in favor of Dunn, McIlvain & Brownlee, were levied on the 22d October, 1844, on six slaves which had not been levied on before by the execu-

tion of either party. These slaves were offered for sale under the levies on the 1st Monday of November, and purchased by Lockhart, for about $1,500, who claimed the right to credit the amount on the execution of Messrs. D., McI. & B. The plaintiff insisted that his execution was entitled to priority, and gave notice to the sheriff not to allow the credit to be made.

Lockhart then produced an execution against sundry defendants, including McLaughlin, in favor of Dunn, McIlvain & Brownlee, for $10,746 08. This execution was received by the sheriff of Perry, on the 14th December, 1842, and levied on two slaves as the property of McLaughlin, and other slaves as the property of some of the other defendants, and on the 30th of May, 1843, was returned by order of the plaintiffs therein, without any sale of the property levied on. An *alias* execution was issued, and received by the same sheriff, on the day the first was returned, and on the 30th of September thereafter, was levied on sundry slaves, as the property of McLaughlin and two of the other defendants. On the same day the defendants replevied their respective slaves, by executing delivery bonds, conditioned for their forthcoming on the first Monday in November, 1843, all which were forfeited, and so certified on the 10th November. A *pluries fi. fa.* against the defendant's estate was issued, and placed in the hands of the sheriff of Perry, on the 5th of December, 1843; this execution also embraced the sureties in the delivery bonds. Under this *fi. fa.* the sheriff sold twelve of the negroes that had been levied on by the second execution in favor of D., McI. & & B., on the first Monday of May, 1844, the remaining eight had not been sold, but were still in the possession of the defendants. The eight slaves referred to, had never been levied on by the *pluries fi. fa.*, nor in the actual possession of the sheriff, but by his permission remained with the defendants, to be delivered to him when required to be sold, under the execution of D., McI. & B. Before the day appointed for the sale, the sheriff called upon Lockhart to know if he must sell enough property to satisfy the execution, the latter replied he would do nothing that would affect his lien, nor must he (the sheriff,) do any thing that would cause him to lose it; but if he did not make the money by a sale of the property, he (Lockhart,) would not rule him for not making it. The sheriff then took the advice of counsel and did not

96

sell the property to satisfy Lockhart's part of the execution; but would have sold and satisfied it, if he had not been told that he would not have been ruled. Lockhart refused to give the sheriff an order " to release the execution without making the money." The application of the sheriff to Lockhart was made a few days before the 1st Monday in May, 1844, and when he could by a sale of the remaining eight slaves on that day, have made a sufficient sum of money to satisfy the execution. The negroes which were sold, brought $3,941, which had been paid to D., McI. & B.

Lockhart proved that he had paid to Edwards, Lapsley & Hunter, the attorneys of D., McI. & B. $3,500, and in consideration thereof, on the 9th of March, 1843, they (the attornies) made a written transfer of an interest in the judgment, amounting to the same sum. One of the attornies, shortly thereafter, gave notice to the sheriff of Perry, that Lockhart had the above interest in the judgment, and that he must, as to that amount, be governed by his instructions, and informed the sheriff, that his orders were, not to interfere with Lockhart's rights. The same attorney testified, that before the execution supposed to have a preference of the plaintiff in the rule, was issued, D., McI. & B. had obtained satisfaction for their interest in the judgment, except four hundred dollars, which sum he had received within a few days, not of the sheriff, or either of the defendants in the execution, but of a third person.

The defendant then produced a fourth *fi. fa.* in favor of D,. McI. & B. issued the 10th of May, 1844, and levied on the same slaves which were seized under the *fi. fa.* of the plaintiff, on the 22d October, 1844, and purchased by Lockhart on the first Monday of November, as stated above. On these facts it was adjudged, that the plaintiff should take nothing by his motion, &c.

H. DAVIS, for the plaintiff, insisted—1. The payment of $3,500 was a satisfaction of the judgment in favor of D., McI. & B.*pro tanto*. There could be no division of the judgment, so as to give Lockhart an interest in a part of it; besides the transfer of the attornies was not within the scope of their powers, and consequently void. If the plaintiffs in that judgment had never received the money, might they not have proceeded with an execution regardless of Lockhart's claim, and if they received it, is not the

judgment thus far paid off. 2. The facts show that the judgment of D., McI. & B. was in fact satisfied, (6 Porter's Rep. 432,) and as against the plaintiff, the law will consider it satisfied. [9 Porter's Rep. 201 ; 4 Ala. Rep. 427; 4 Mass. Rep. 402 ; 2 Pick. Rep. 586 ; 4 Dall. Rep. 358 ; 3 Wash. C. C. Rep. 60.]

3. The levy of the execution of D., McI. & B. on the twenty slaves, to the extent of their value, amounted to a satisfaction, and the subsequent seizure of the six, on which the plaintiff's *fi. fa.* was levied, cannot operate to the prejudice of the latter. Crawford v. The Bank of Mobile, 5 Ala. Rep. 55, is unlike the present case. There the controversy was between the parties to the execution—here between different execution creditors.

4. The third execution issued in favor of D., McI. & B. lost its lien, and if not dormant, was fraudulently kept open. [5 Ala. Rep. 43.] This *fi. fa.* having become inoperative as against the plaintiff, the one last issued, must operate *per se*, without the aid of any previous execution, and cannot postpone the plaintiff's lien which dates back to the time when his first execution was placed in the sheriff's hands.

A. F. HOPKINS, for the defendant in error. 1. The transfer of an interest in an execution to the officer who holds it for collection, it is admitted is against public policy, and void. [15 John. Rep. 443.] But no principle of law inhibits such a transfer as that under which Lockhart claims, and it is not objectionable because it was made by attornies at law ; it imposes no responsibility upon their clients, is therefore beneficial to them, and their assent will be presumed ; the more especially as it appears that more than a year has elapsed, and they have not dissented from it. [Paley on Ag. 143-4 ; 12 John. Rep. 300.] But it appears from what was said by one of the attornies of D., McI. & B., to the sheriff, that they were informed of the transfer, and really approved of it. [1 Johns. Cases, 110 ; 1 Caine's Rep. 539 ; 12 Mass. Rep. 60 ; 3 Wash. C. C. Rep. 254 ; 14 Sergt. & R. 27.]

2. Lockhart did not control the execution so as to protect the property of the defendants therein from the demands of other creditors ; he did not direct the sheriff not to sell enough to satisfy it *in toto*, but the sheriff of his own accord gave the indulgence. Lockhart did not assent that any thing should be done, or omitted by the sheriff, which could impair his lien ; to this he

objected, and only agreed that if he failed to make the money, he would not rule him for a failure. His lien does not depend upon his right to such a remedy, but is wholly distinct from it. It is perfectly certain that the sheriff acted upon his own responsibility, after having taken the advice of his own counsel. What Lockhart said did not confer a discretionary power upon the sheriff; for he expressly said his lien was not to be impaired.

3. To make an execution dormant, the plaintiff, or some one authorized to act for him, *must be the actor in directing the course of the sheriff.* [5 Ala. Rep. 43, 53-4; 5 Cow. Rep. 390.]

4. If the execution under which Lockhart claims was entitled to the money, then he may retain the amount of his purchase, and have it credited on the execution. [19 Johns. Rep. 84; 1 Wash. C. C. Rep. 241; 3 Marsh. Rep. 68; 5 Cow. Rep., *supra.*]

COLLIER, C. J.—The motion against the defendant attributes neglect to the sheriff for failing to make the money on the plaintiff's execution, issued on the 8th June, 1844, and is intended to test the question of priority between that and the *fieri facias* at the suit of Dunn, McIlvain & Brownlee, which was simultaneously levied. It is conceded that the latter caused an execution to be placed in the sheriff's hands one year previous to the time when the first execution upon the plaintiff's judgment, issued; but it is insisted, that the judgment in favor of Messrs. D. McI. & B., has been satisfied by the money advanced by Lockhart; that the levy of their *alias fi. fa.* on the twenty slaves was a satisfaction thereof; that their *pluries* execution became dormant, and was fraudulently kept open; and lastly, the lien of the plaintiff's *fi. fa.* which was levied simultaneously with it, should not be postponed by it.

True, an attorney at law may not have the power to assign a judgment after it is satisfied to one who became liable to its payment, (6 Ala. Rep. 432,) yet if a person on whom no duty of that kind rests, thinks proper to advance his money for the accommodation of either plaintiff or defendant, it is difficult to conceive of an objection to keeping the judgment open for his re-imbursement. Such an advance cannot be regarded as a payment, but rather as a mere loan of money, with the agreement that the

lender shall have an interest in the judgment equal to the money lent. It is needless to inquire whether the powers of an attorney for the collection of a debt authorize him to enter into such an arrangement. If such an inquiry were necessary, we should perhaps be inclined to sustain the authority, where the client cannot be burthened with costs, or otherwise prejudiced. But in the present case, it appears that the attornies have paid over the money to the plaintiffs in the judgment, and we think it clear, that Lockhart is entitled to an execution in the plaintiff's name, until he is reimbused ; unless the judgment shall be sooner satisfied.

The first execution issued upon the judgment under which Lockhart's claims was levied and returned without a sale by the order of the plaintiff therein ; the second was levied on the twenty slaves, delivery bonds given and forfeited ; under the third, which was issued on the 5th of December, 1843, twelve of the slaves seized under the second were levied on and sold ; the remaining eight had not been taken possession of by the sheriff, but still remained in the hands of the defendants in execution.

No question can arise in this case, whether the first execution of Messrs. D., McI. & B. was dormant; for the first *fi. fa.* at the suit of the plaintiffs, did not go into the sheriffs hands until nine days after their *pluries fi. fa.* had been delivered. Now although it is not explicitly stated, yet the fair inference from the entire case, is, that the property levied on by the first execution was either returned or taken possession of by the defendants, to whom it belonged. As to the second, it is shown that they were returned upon the delivery bonds being given.

It is laid down, that if the sheriff take goods in execution, under a *fi. fa.* whether he shall sell them or not, the defendant shall not be liable to a second execution. But where the goods levied on are removed by the defendant, or by his permission, or connivance, or they are delivered to him upon giving a forthcoming bond, which he forfeits, so that they cannot be sold, the plaintiff may have a new execution. [9 Porter's Rep. 201 ; 4 Ala. Rep. 427.] These citations are conclusive to show, that the levy of the second *fi. fa.* and proceedings consequent thereon, do not amount to a satisfaction in law.

In respect to the third execution of Messrs. D., McI. & B., it should have been levied upon a sufficiency of property to satisfy

it, if to be found, unless the sheriff was otherwise instructed by those authorized to control it. The fact that it exerted a paramount lien over the *fi. fa.* of the plaintiff, did not justify the sheriff in failing to levy the latter, if the defendant therein had property which had not been seized under the former. [8 Porter's Rep. 147.] But the omission of the sheriff to do his duty in this respect, cannot postpone an elder to a junior execution, especially if the plaintiff in the former is merely passive, without attempting to control the action of the sheriff. [4 Ala. Rep. 93, 98.]

It is insisted that Lockhart's answer to the sheriff, when asked if he must sell enough property to satisfy the execution in which he was interested, that he would do nothing that could affect his lien, nor must, (the sheriff,) do any thing that would cause him to lose it; but if he failed to make the money by a sale of property, he would not rule him for the failure, made the third *fi. fa.* of D. McI. & B. dormant, and inoperative. The authorities very generally concur, that in order to make an execution dormant, and constructively fraudulent, against one of a junior date, there must be an active interference on the part of the plaintiff, or some person authorised to represent him. A mere acquiesence in the neglect of the sheriff cannot have that effect. [See Wood v. Gary, et al. 5 Ala. Rep. 43, 55, and authorities there cited.]

Lockhart did not authorize the sheriff not to proceed upon the execution under which he claims; so far from giving such instructions, he peremptorily refused to do any thing that could affect his lien, and prohibited the sheriff from so acting as to prejudice it. The remark that he should not rule him if the money was not made by the levy on, and sale of property, amounted to nothing more than this, that he would pretermit a remedy against the sheriff, which he was not bound to pursue, in order to the continuance of his lien against a junior execution creditor. This afforded no warrant to the sheriff for the failure to enforce a collection of the third *fi. fa.* of Messrs. D., McI. & B. His omission may perhaps have been influenced by what was said by Lockhart in the conversation referred to. Yet if the latter did not intend to assent to and approve the delay, with the view of aiding the defendants in execution, or some of them, and thus by the effect of his paramount lien secure their property from junior

executions, the remark that he would not rule the sheriff, cannot have the effect to render the execution in respect to which it was made, dormant, and fraudulent by construction, as against the plaintiff. There is nothing in the record to warrant the imputation of such an intention, and we cannot consequently infer its existence. This conclusion being attained, it is not (as we understood it,) pretended that the fourth *fi. fa.* of Messrs. D., McI. & B., the lien of which, by relation, dates back to a period before the plaintiff's first execution issued, is to be postponed to it. The lien of its predecessor being unimpaired by the causes considered, the plaintiff is not entitled to any part of the money for which the six slaves were sold to Lockhart.

This view disposes of the entire case, and the consequence is, that the judgment is affirmed.