[No. 2472.]

HEREFORD ET AL. v. BENTON, AS SHERIFF.

1.  **Appellate Practice—Presumptions—Evidence.**

Where trial was to the court, on appeal it will be presumed that, in making its findings, the trial court considered all the competent evidence received in the course of the trial.

2.  **Chattel Mortgages—Possession by Mortgagee.**

In an action by a mortgagee against a sheriff to recover the value of a stock of goods levied on and taken under executions against the mortgagor, the only evidence of possession by the mortgagee was that the mortgagor took the mortgagee to the store where the goods were situated and told the clerk in charge that the stock had been transferred to the mortgagee, that the mortgagee posted a typewritten notice on the door that he was in possession and directed the clerk to continue the business as before, except the sales should be for cash and the money deposited to the credit of the mortgagee; that the mortgagee then left the store in the charge of the same parties that had been in control prior to the execution of the chattel mortgage, and was not again at the store before the levy of the executions a week later, and during that time the business was continued in the same way as before the execution of the chattel mortgage, a finding of the trial court that the mortgagee did not take and hold possession under his mortgage as required by statute was sustained.

3.  **Executions—Levy—Carelessness of Officer.**

The carelessness of an officer in holding possession of goods under an execution, would not invalidate the execution lien without evidence of complicity in such carelessness on the part of the execution creditor.

4.  **Judgments—Rendered in Vacation—Demurrers.**

Where a demurrer to a complaint was overruled and defendant declined to plead over, a judgment might be entered on the complaint in vacation.

*Appeal from the District Court of Ouray County.*

Mr. R. D. THOMPSON, Messrs. HENRY & SIGFRID, Mr. T. F. BRADSHAW and Mr. T. W. EMERSON, for appellants.

Messrs. STORY & STORY, for appellee.

GUNTER, J.

Action by appellants as mortgagees and assignees of certain mortgages to recover of appellee, as sheriff, the value of merchandise and fixtures levied on under writs of execution against the mortgagor. A vital issue was whether a mortgage of June 1, 1897, hereinafter referred to as the Krisher mortgage, assigned to appellants, constituted a prior lien upon the property covered thereby to that created by the issuance, delivery and levy on June 8, 1897, of the writs of execution under which appellee justified. The mortgage provided for possession of the mortgaged property by the mortgagee. Its priority as a lien upon the property covered thereby as against the lien created by the levy of the writs of execution—the levy of the writs followed immediately on their delivery to the sheriff—depended upon whether, at the time of such levy, the mortgagee had taken and held such possession of the mortgaged goods as is required by our statute of frauds in the sales of personal property.—Mills' Ann. Stats., vol. 1, sec. 2027; *Wilcox v. Jackson*, 7 Colo. 521, 525. This was a question of fact. The validity of the judgments upon which the executions issued, and the sufficiency of the levy thereunder, were also questions in the case. The trial was to the court, and its findings were:

"(a)   Was the first mortgage given to Krisher a valid mortgage, or was it given for the purpose of hindering, delaying and defrauding the creditors of Stadler & Co., the mortgagors?

"(b)   If valid, and not given for the purpose of defrauding creditors, was possession properly taken under this mortgage?

"(c)   Was such possession held?

"(d)   Was the levy attempted to be made by the defendant under the executions mentioned in the pleadings based on sufficient judgments?

"(e) Was such levy properly made, and was possession properly held under it?

"Answering these questions in the order in which they are stated, although the answers must be, to some extent, intermingled, I can find no evidence of fraud in the execution or delivery of the Krisher mortgage. The record of this mortgage, providing as it did, that the mortgagee should take possession of the stock and dispose of the same and apply the proceeds in payment of the indebtedness by the mortgage secured, and then for the satisfaction of other indebtedness of the mortgagors, could be of no effect as giving notice of the mortgage or its contents to any one. The rights of the mortgagee under that mortgage must depend entirely on the possession that may have been taken under it and the subsequent conduct of the mortgagee and of his agents and representatives in attempting to hold possession. Krisher went into possession under the mortgage. No doubt can exist as to that fact, and all rights of subsequent mortgagees who are mentioned in these proceedings must depend on the validity of the possession held under this first Krisher mortgage.

"It seems to me that the plaintiffs should not be permitted to attack the authority of the defendant to act under the executions placed in his hands on June 8th. A sheriff does not seem to me to be bound to inquire into the validity of all court proceedings leading up to the writ which may be placed in his hands for execution. The writ itself, if regular on its face, and issued by the proper authority, should be the sheriff's abundant justification for his proper action under the writ. To call upon a sheriff to pass judgment on the regularity of court proceedings would be to place on him a responsibility which does not seem to me to be contemplated by law.

"The defendant proceeded regularly to execute

the writs of execution. When the defendant proceeded to make his levy under those writs I am satisfied he was told by the representatives of Krisher, the mortgagee, that they were there as the representatives of Stadler & Co., and that both of these persons stated to the defendant that they were holding the goods and fixtures in question under Stadler & Co., the owners of the same.

"Much confusion necessarily resulted from the fact that the articles sought to be taken by the defendant were in a shop occupied in part by another person, carrying on an entirely distinct business, and it may be that the defendant was guilty of carelessness in his manner of holding possession after he had once taken it by virtue of his executions. I do not believe that his carelessness, however, should be held to invalidate the levy, the circumstances being such as the testimony shows.

"The court therefore finds that Krisher did not properly hold possession which he took under his mortgage. Second, that the defendant was justified in levying his writs of execution and that he did levy the executions and did properly hold possession of the articles so levied on.

"The judgment of the court will be entered in favor of the defendant and against the plaintiffs for the defendant's costs, to be taxed."

The court here found that Krisher "did not properly hold possession under his mortgage," and that the defendant "did levy his execution, and did properly hold possession of the articles levied upon." If there was evidence to sustain these findings of fact we are concluded by them.—*Hazeltine v. Brockway,* 26 Colo. 291; *Gregory v. Fillbeck's Estate, ante,* 131.

It is contended that the trial court based its finding, as to the failure of the mortgagee to retain possession, entirely upon the statements referred to

in its opinion as having been made by Stadler and Newman to the sheriff, appellee, at the time of the levy, and that such statements were insufficient to justify the findings. The testimony of the sheriff as to these statements was received in evidence without objection and went in contradiction of certain of the testimony of Stadler and Newman as to who was in possession at the time of the levy, but this evidence was only a small part of that going to show that the mortgagee, Krisher, was not in possession when the writs were levied. This will appear from a discussion of the evidence later herein. We must presume that the court in making its findings did its duty, that is, that it considered all competent evidence which had been received in the course of the trial. This presumption is a reasonable one and is not overcome in our opinion by anything in the findings or judgment. We shall consider whether the evidence taken as a whole was sufficient to sustain the findings.

1. The drug store covered by the mortgages and levied on under the writs of execution was conducted in one side of a room and a jewelry store under a different owner on the other side. The store was under the name of "The Pioneer Pharmacy," and operated by the firm of A. W. Stadler & Company. There was some conflict in the testimony as to whether "A. W. Stadler & Company" was composed of A. W. Stadler, the wife, and L. C. Stadler, the husband, or only of the wife. The business had been under the management of L. C. Stadler about eighteen months. L. C. Stadler was a physician who gave the greater part of his time to the practice, but spent some of it in the drug store in attending to its ordinary duties. Much of the time he left the store in charge of a clerk, Newman.

June 1, 1897, the mortgage in question was given

running to Krisher. In the evening of that day L. C. Stadler brought Krisher into the store, notified Newman that the stock had been transferred to Krisher as mortgagee, and thereupon Krisher posted a typewritten notice two inches in width by four inches in length on the glass part of the front door, such notice being as follows:

"NOTICE.

"This stock of drugs and fixtures of A. W. Stadler & Co., are in possession of E. A. Krisher, mortgagee, by his duly appointed agents and employees, L. C. Stadler and A. C. Newman.

"E. A. KRISHER, Mortgagee."

Krisher instructed that the business of the store should be conducted as theretofore except that the sales should be for cash, and the proceeds thereof be deposited in bank to the credit of the mortgagee. Krisher that evening returned to his place of residence, nine miles distant, and neither by his presence in the store, nor otherwise, contributed any act showing that he had taken possession under the mortgage between the date of the mortgage, June 1, and the levy of the writs of execution, June 8. The business continued to be carried on in the same room, in the same way, and under the same manager and clerk as before Krisher undertook to take possession. There was no evidence of a change of signs, there was no evidence of many other acts which might conveniently have been done evidencing the change of ownership in the store. The court might have reasonably concluded that the only evidence of a change of ownership in the drug store was the typewritten notice. The question, then, is reduced to this: Can we say that the court had not reasonable grounds for concluding that the small typewritten notice alone was not sufficient evidence of the change of possession and ownership required by law? It would serve

no useful purpose to attempt to review the many cases decided in this court and the supreme court declaring the law on this subject, it is with sufficient clearness announced in *Cook v. Mann*, 6 Colo. 21, 22:

"The vendee must take actual possession, and the possession must be open, notorious and unequivocal, such as to apprise the community, or those who are accustomed to deal with the party, that the goods have changed hands; that the title has passed out of the seller and into the purchaser.

"This must be determined by the vendee using the usual marks or *indicia* of ownership and occupying that relation to the thing sold which owners of property generally sustain to their own property."

We think there was an abundance of evidence from which the court might reasonably have concluded that the mortgagee did not hold such possession of the mortgaged chattels as the law required.

2. It is contended that an effectual levy was not made and retained under the writs of execution. The court, as stated hereinbefore, found that appellee "did levy his execution and did properly hold possession of the articles levied upon." There was evidence which, if credited by the court, sustained this finding. This evidence was that appellee received the writs of execution June 8; that he went to the drug store and found Newman apparently in charge; that Newman informed him that A. W. Stadler & Company owned the drug store, and that he was holding it under that firm; thereupon appellee exhibited his writs and informed Newman that he had taken charge of the store under them. Dr. Stadler stepped in, and soon after the witness Detch. In reply to the inquiry of appellee, Dr. Stadler informed appellee in effect as did Newman. Appellee stated to Stadler, as he did to Newman, that he had levied on the store under the writs. Appellee

then left the store for a few moments, but left Detch in charge as his custodian during his absence. On his return he employed Detch and Newman to act as custodians of the stock and to take an inventory, and they set about at once to make the inventory, taking goods down from the shelves and piling them on the counter as the inventory progressed, afterwards replacing them on the shelves. On the second day Detch was compelled to leave and one Stevens was employed to aid in taking the inventory, and in the custodianship of the stock. Newman and Stevens continued to take inventory for eight and one-half days longer, which extends to the time when there is no question but what the sheriff was in exclusive control of the goods levied on. To sum up: the writs were issued and delivered to appellee as sheriff, June 8. He promptly levied the writs, taking possession in person; he later left Detch as custodian, then Detch and Newman as custodians, and later Stevens and Newman.

We think the evidence sustains the finding that the sheriff made an effectual levy and maintained it, yet had he been careless in holding possession it would not have invalidated his lien without evidence of complicity in such negligence on the part of the execution creditor.—*Williams v. Mellor,* 12 Colo. 1, 7; *Russell v. Gibbs,* 5 Cow. 390; *Doty v. Turner,* 8 Johns 20; *Leach v. Williams,* 8 Ala. 759; Freeman on Executions (3d ed.), vol. 2, § 207.

3. It is said that the judgments upon which the executions were based were rendered in vacation, are therefore void, and the executions nullities. Demurrers to the complaints in the actions in which the judgments assailed were rendered were overruled. Defendants therein declining to plead over. Mills' Code, section 74, thereupon authorized the entry in

vacation of judgments on the complaints.—*Godding v. Rossiter, ante*, 245, 77 Pac. 1094.

This section of the code has been upheld.—*Terpening v. Holton*, 9 Colo. 306, 316.

The judgment should be affirmed.

*Affirmed.*

THOMSON, P. J., not participating.