Judge Marshall
delivered the Opinion of the Court.
This was an action of ejectment brought for the recovery of two adjoining lots in the town of Hardinsburg. The plaintiff declared in two counts, one on the joint demise of Crow and Jarvis, the other on the separate demise of Crow. Addison and Calhoun were made defendants in the place of the casual ejector; and a verdict and judgment having been rendered against them, they have appealed.
On the trial of the cause, it was proved that, in April, 1832, an execution upon a judgment of the Circuit Court of the United States for the district of Kentucky, against Samuel Algeo, being in the hands of the Marshal of Kentucky, was levied on the two lots in question, as the property of Algeo — they being then in his possession; that on the 10th of May and 7th of June of the same year, the levy remaining in force, Algeo executed two mortgages to Crow and Jarvis, of which both embraced the same lots, and the second one was duly recorded. In March, 1833, a suit in chancery, for the foreclosure of the mortgage, was commenced by Crow and Jarvis, against Algeo, and on the 15th day of July, 1833, the lots having been previously advertised by the marshal, and valued according to law, were, by the request of Algeo, in writing, but not under seal, sold together, under a writ of venditioni exponas, and by virtue of the judgment, execution and levy above referred to. At this sale, Addison, being the highest bidder, became the purchaser, at the sum of one thousand seven hundred dollars, of which four hundred and sixty-three'dollars sixty-three cents, being all that was due on the execution, was secured by bond to the plaintiffs in the judgment, and the residue was immediately paid to or set *272 tled with Algeo. In February, 1834, Addison, having paid off the sale bond, received a deed from the Marshal, for the two lots, which was duly acknowledged and recorded. Afterwards, in April, 1834, a decree of foreclosure and sale was rendered, without answer, in the suit in chancery, and the lots were sold by a commissioner, when Crow became the purchaser, for the sum of six hundred dollars, and the lots were conveyed to him by commissioner’s deed, dated in July, 1834, and duly recorded. In September, 1834, Algeo acknowledged a deed, bearing date the 10th day of May preceding, in which, after reciting the purchase of the lots by Addison, at the marshal’s sale, and the deed to him by the Marshal; in consideration thereof, and of one dollar, he confirms the same, and grants the title &c. to Addison. It was also proved that, Algeo was in possession of the lots at the date of the mortgages, and so continued until after the sale by the Marshal, when, as it may be assumed from the evidence, Addison and his tenants, on whom the declaration and notice were served, received the possession from him, and continued to hold it until the commencement of the suit.
Instructions.
A motion for a nonsuit, made at the proper time, overruled, and brings up the question whether the pl’tff had a right to recover upon the whole evidence, tho’no further instruction,or new trial, was moved.
*272 This being all of the evidence, the Court, on motion of the plaintiff, instructed the jury that, the sale by the Marshal, of the entire lots for one thousand seven hundred dollars, when only four hundred and sixty-three dollars sixty-three cents were due on the execution, was .void; and that neither the Marshal’s deed, nor the subsequent deed of Algeo, passed the title as against the mortgage and the commissioner’s deed under the decree; and that the direction and consent of Algeo (that the whole should be sold,) being dated after the mortgage, conferred no other authority upon the marshal, as against the mortgage, than he before had, by virtue of the execution and levy. The Court, also, refused to instruct the jury, as asked for by the defendants, that the mortgage to Crow and Jarvis, being made after the levy of the execution on the lots, and while it was in force, is void, and confers no title on the lessors of the plaintiff.
The defendants had, also, at the proper stage of the trial, moved for instructions as in case of a non-suit, but *273 as the evidence subsequently introduced, did not materially change the case, we have not deemed it necessary to discriminate between the evidence introduced by the plaintiffs, and defendants. But the defendants are entitled to the benefit of the question, whether, on the whole case, the plaintiff is entitled to recover, altho’ that question is not made by any of the subsequent instructions given or refused, nor by a motion for a new trial.
Principal questions.
As heretofore decided, an ex’on in the hands of an officer, is, as to the def’ts personal property, a mere lien; it does not divest him of his title; if he sells the property, it will pass by the sale —subject to the levy and sale under the ex’on; and when the lien ceases, by a replevin of the debt, or otherwise, the purchaser will be secure from the effect of the judgment; a subsequent execution for the same debt, will not reach the property in his hands; and if such an execution be levied upon it, he may maintain his action for it, notwithstanding another lien, by another execution, existed at the time of his purchase, and is still in force. And, as now held—
The material questions arising upon the evidence, and the instructions given and refused, are: First. Supposing Algeo to have had the legal title — did it pass by the mortgages, or either of them, executed after the levy under the execution and while it was in force? Second. Was the sale and conveyance by the Marshal void? and if so, can its invalidity be taken advantage of in this suit? And, third — is the possession of Algeo, as above stated, such a title, or such evidence of title, as authorized a recovery in this action — supposing the plaintiff to have been invested by the mortgage and commissioner’s deed with such title as Algeo had? Fourth. A fourth question is, also made, upon the admissibility of evidence offered by the defendant. We shall consider these questions in the order in which they have been stated.
First. Several dicta of this Court may. be found which apply to the first of these questions. But upon an examination of the cases, it will be seen that they are not entitled teethe weight of judicial authority upon the point. And so far as we have discovered, it has never been judicially determined by this Court, what precise effect the lien created by the reception of a. fieri facias into the officer’s hands, or by his levying it upon land, has upon the title, and upon the power of alienation. It has, however, been decided, with regard to personal property, that notwithstanding the lien in favor of an execution in the officer’s hands, the owner of the property may, by a sale of it, pass the legal title to the vendee, subject to be defeated by a subsequent levy and sale un *274 der the same execution; that if the execution, instead of being so levied, is replevied, the lien being at an end, the title of the purchaser is indefeasible as to that debt; and that if an execution, subsequently issued on the replevy bond, be levied on the same property, and it be sold as the property of the debtor, the original purchaser may maintain an action for it, notwithstanding there may have been a lien upon the same property in favor of another execution in the hands of the officer, at the time of the first purchase, and although such outstanding lien may have been kept in force, and be still subsisting at the time of the trial. Harrison vs. Wilson, 2 Marsh. 551.
The lien on land resulting from an ex on being in the hands of an officer, is no divestiture of the title of the debt- or, nor does it deprive him of the power of selling the land-though the conveyance may be overreached if defeated by a levy of the execution, and sale under it. The levy of an ex’on upon the def’ts land renders the lien more specific, completes the authority of the officer to sell, and preserves the authority and lien, which would otherwise expire with the writ. But the levy (before sale) does not divest the defendant of his title, nor destroy, nor suspend, his right to sell and convey the land; though his sale and conveyance will be liable to be defeated by a valid sale under the execution— by which the title, as the def’t held it when the lien first took effect, by delivery of the execution to the officer, will pass. But if, before any sale takes place, or in consequence of the sale being void, the lien ceases, the title of the purchaser is freed from its effects.
*274 If, as we see no reason to doubt, the lien arising from delivery of the fi. fa. to the officer, has no greater effect upon the title to real estate than upon the title to personal property, the deduction from this case is, that this lien does not divest the title of the debtor m his land, nor deprive him of the power of passing it by sale and conveyance to another — subject, however, to be overreached and defeated by subsequent valid proceedings under the execution. And this, we have no doubt,is the true principle in relation to the lien as existing before a levy.
The question then arises, as to the effect of a levy. Does it ipso facto divest the defendant of his title, or prevent a transfer of it, or does it leave the title in him, with the power of transferring it, subject to be defeated by a valid sale under the execution? The levy of a fieri facias upon land of the debtor undoubtedly renders the lien more specific, and being a necessary step in the execution of the writ, completes the authority of the officer to sell, and has the further effect of giving continuance both to the authority and the lien, which would otherwise expire with the return of the writ. And we do not perceive any necessity or reasonable ground for ascribing to it any other efficacy than this.
In levying upon moveable property, the officer takes or may take it into his possession. He is bound to have it forthcoming for the purposes of the execution, and may take a bond for securing that object, or may maintain an action in his own name for the asportation or conversion of the property, and, on making sale, he de *275 livers it to the purchaser. But land being immoveable, and no responsibility for its preservation being incurred by the officer in consequence of a levy, we see no ground for ascribing to him any of the rights which, in case of a levy upon moveable property, grow out of his responsibilities, and are necessary to enable him to execute the mandate of the writ. He does not, by a levy on land, acquire the possession, either in fact or in law, or he might deliver it to the purchaser, on making sale under the execution. This, however, he cannot do. Woolfolk vs. Overton, 3. Marsh. 69, and 3. Littell, 24; Morton vs. Sanders’ Heirs, 2. J. J. Marsh., 194. Neither can he transfer the title to a third person before sale; nor can he, or any other person, by virtue of the lien and the levy, evict the defendant in the execution. On the contrary, the defendant is undoubtedly entitled to retain the possession, and to defend it, except against the entry of the officer for the purpose of levy or sale; or he may bring an action for its recovery, or for any injury to it, in the same manner and with the same effect (until a sale and conveyance by the officer,) as if there had been no execution, no lien, and no levy. He has, therefore, as it seems to us, notwithstanding the lien and the levy, a subsisting interest in the land which may be alienated, and which may be held by the alienee in the same manner, and subject to the same defeasance, as if retained by himself.
An officer who he can make no the recovery of upon moveable property, may take it into possession, will be accountable for it, and, if it is taken from him, he may sue for it in his own name, and when sold by him, he delivers it.—But, by a levy on land, the officer acquires no possession of it, in fact or in law, & incurs no res-transfer of it to a third person, before the sale under the ex’on, nor can he then deliver it to the purchaser, or evict the defendant. Between the levy and the sale, the defendant may maintain an action for the land, or for an injury to it—his rights in relation to it, being the same between the levy and the sale, as before the levy.
The sole purpose of the law in declaring a lien in favor of executions, is to secure the object of the execution against the effect of any subsequent alienation of the land by the debtor. To do this, it holds the land subject to all regular proceedings under the execution, and ultimately to sale and conveyance, notwithstanding any such alienation. This is, in fact, the essence and extent of the lien. It is not necessary for the effectuation or security of its objects, to say that it actually disables the debtor from alienating his land, and renders such alienation absolutely and to all purposes void. It is sufficient that such alienation is wholly inoperative as *276 against the lien, and forms no obstruction to the regular proceedings under the execution, and that it will, therefore, wholly defeated by a valid sale and conveyance. In making which, the land will be regarded, in consequence of the lien, as remaining m the same condition at the time of the sale, as it was when the lien commenced, and therefore, as being, for the purposes of the execution, still the land of the debtor, notwithstanding the intermediate alienation. And to effectuate this operation of the lien, the conveyance, made in pursuance of a valid sale, will relate back to the commencement of the lien, and operating as a conveyance of the title from that date, will thus overreach and defeat the intermediate alienation. According to this view, until the lien is consummated and converted into an actual title by regular sale and conveyance, the intermediate alienee is invested with the title of the debtor, subject to be defeated in the manner stated, and if the lien is lost, or in any manner removed before it is consummated, he holds the title relieved from the defeasance.
This view is in perfect accordance with the decision in the case of Harrison vs. Wilson, above cited, and with the principle declared in the case of Miller vs. Riley, 1. Dana, 360; where the Court say: “The executions having come to the sheriff’s hands before the conveyance from Burgen (the debtor) to Million, they, therefore, acquired a prior lien, which necessarily caused the subsequent sale and conveyance to Riley (under the executions) to overreach and avoid by relation, the conveyance to Million. Such (continues the Court) has been, the uniform effect given to subsequent levies and sales under executions, when they came to the hands of the officer prior to the alienation of the defendant. This is most obviously necessary in order to effectuate the lien in favor of the execution secured by statute, from the time it reaches the officer’s hands.”
In the case of Lock and Fleming vs. Coleman, 4. Mon. 316, it is intimated that, the intermediate alienation of the defendant in the execution, during the existence of the lien, may be void as fraudulent; and in the case of Butts vs. Chinn, 4. J. J. Mar. 641, the Court say, “as a *277 lien attached to the land in consequence of the levy, the defendant, in the execution had no legal title which he could convey to a stranger in the execution.” But it is evident, from a consideration of the cases, that these intimations are not, and were not intended to be, understood as the solemn decisions of the Court. And although, as mere intimations of its opinion, they are entitled to great respect, they cannot be admitted to have the weight of authority. No reason appearing for attributing to a levy any efficacy, except as one step towards the consummation of the lien arising from the delivery of the execution to the officer, both of these intimations seem to be in direct conflict with the decision in the case of Harrison vs. Wilson, supra, and with the principle on which the intermediate alienation is avoided, as laid down in the case of Million vs. Riley, supra. Which principle is also substantially stated in the case of Butts vs. Chinn, where the Court say — “ the sheriff’s deed took effect and vested the legal title, by relation, from the time of the levy.” The difference between the propositions, as declared in the two cases, is that, in the case of Million vs. Riley, the sheriff’s deed is said, and properly, as we think, to take effect by relation from the commencement of the lien.
The statutes of this state subjecting lands to the payment of debts, authorizes the sale of so much only as will pay off the execution; and if more is sold, when nothing in the condition of the estate makes it necessary, without other authority than the ex’on and levy, the sale is unauthorized and void. As the marshal of the the U. S. is governed by the state law in executing a fi.fa. the above principle applies to his sales.
We are of opinion, therefore, upon authority, as well as from our own convictions, that notwithstanding the levy of the execution upon the lots now in contest, the mortgages from Algeo to Crow and Jarvis, invested them with such title as he had, subject to be overreached and defeated by a regular sale and conveyance, under the execution, but not by any void proceeding.
Second. We come, therefore, to the question whether the sale and conveyance were void. More land having been sold than was necessary to satisfy the execution, and no circumstance connected with the condition of the property being shewn, which justified the sale of the *278 whole together, the sale was unauthorized by the execution, and by the statute subjecting land to the payment of debts, which permits the sale of only so much as may be necessary to satisfy the debt. It has been repeatedly decided, that such a sale, made by a sheriff, is void, unless he have sufficient authority for making it, other than that furnished by the law and the execution. Patterson vs. Carneal's Heirs, 3. Mar. 619. Pepper vs. the Commonwealth, for Thornton, 6. Mon. 27 &c. And, as the authority of the Marshal to sell land is derived from the same statute, and should be measured by the same rule as that of the sheriff, we have no doubt that a sale and deed by the Marshal, must be pronounced void on the ground of his exceeding his authority, under the same circumstances that would render the sheriff’s sale and deed void on the same ground.
The question whether a sale of land under ex’on was void, or valid, may be made on the trial of an ejectment for the land, altho’ the sale had never been previously impeached. And,
Altho’ the Federal court has the exclusive right to control and correct its own records & the acts of its officers— us the marshal, in executing a fi. fa. is governed by the state law, the above principles apply where sales have been made by him.
It was also decided in the case of Patterson vs. Carneal's Heirs, supra, that the voidness of a deed on this particular ground, may be first shewn and declared ywhen the deed is exhibited by a party on the trial of an action of ejectment, though never before determined in any direct proceeding. And as the Court in which this suit was commenced, had complete jurisdiction over the case both with respect to the parties and to the land which was the subject of controversy, and had, therefore, jurisdiction to decide every question which might arise, and which could appropriately be decided in the action of ejectment, it unquestionably had the right to decide, and therefore was bound to decide, this question as to the validity or invalidity of the sale and deed of the Marshall, though it relates to the act of the Federal officer in executing the process of the Federal Court. That Court has, of course, the exclusive right to control and correct its own records and the acts of its officers. But without intermeddling with this right, the Court in which this action was commenced, and this Court, as the revising tribunal, have, as unquestionably, the right to decide the present question, as it arises in the action of ejectment. And in doing so, they must look to the construction given by this Court, to the statute authorizing *279 the sale of land under judgments, &c., as properly controlling the question wherever it may arise.
A mortgage having been made while an ex’on bound the land, though the mortgagor must be deemed to be still the owner of the land for all the purposes of the ex’on, the legal title, for other purposes, is in the mortgagee, & the mortgagor has no right to direct a sale of more of the land than is necessary to satisfy the execution. No such right results from the equity of redemption. And-A sale of an equity of redemption pending a suit for a foreclosure, would he inoperative; and, if effectual, would not overreach the mortgage, tho’ sold under an ex’on that was a lien on the land before the mortgage existed.
A deed made by a mortgagor to a stranger, after a suit for a foreclosure, can avail nothing against the mortgagee.
Unless, therefore, the Marshal had some other sufficient authority, besides the execution and the statute, to justify the sale and conveyance of the two lots, his deed was properly decided to be void by the Circuit Court, and must be so declared here.
The additional authority consists of the written direction and request of Algeo, to sell both lots together. It seems obvious, however, that unless Algeo was in fact the owner, of the land, or might be so regarded by the officer and the plaintiff or purchaser, for the purpose of authorizing the sale, the authority derived from him however formal it might have been in its own character, was wholly ineffectual to authorize a sale of land which did not belong to him. The question then is,—could Algeo be considered as the owner of the land for the purpose of authorizing a sale to a greater extent than was required or authorized by the execution?
It has already been decided that his mortgage to Crow & Jarvis passed his legal title, subject to the execution. But although, for the purposes of the execution, he was still to be considered as the owner of the land, yet, as the purposes of the execution extended no farther than to authorize a sale of so much land as might be necessary for its discharge, he could not, on that ground, be considered as the owner of any more of the land than was necessary for that purpose, and could not, therefore, have any right to authorize the sale of any more. The mortgage could not obstruct, or interfere with, the regular operation of the execution, or any rights growing out of it; but on the other hand, the execution did not confer any rights, or impose any restrictions, but such as were necessary and appropriate for its own legitimate purpose of satisfying the debt out of the land. It was not necessary, for the purposes of the execution, that the defendant therein should have the right to consent to the sale of more land than was necessary to satisfy it, and as he had parted with his title, as far as he could do so by mortgage, neither the plaintiff in the execution, nor the officer, nor any other person, had a right *280 to consider him the owner for the purpose of authorizing the sale.
Query—whether, where there has been an illegal and void sale of land under execution, the lien would be revived by a quashal of the sale and return.
The equity of redemption, it,is true, remained in him after the mortgage, but that did not authorize him to consent to a sale of the whole of the land. Nor was it the equity that was in fact sold, or that was directed to be sold. And if it had been, he had no right to give such direction, and the sale as to that, would have been inoperative, as a suit for the foreclosure of the mortgage .was then pending.
But supposing that he could have given, and did give, a valid authority for the sale and conveyance of his equity of redemption — such authority would have given no aid to the sale and deed under the execution, but would have produced the same uncertainty and confusion which would have existed without it, and on the ground of which the sale, without it, would have been void. For so far as the deed rested upon such authority, it would convey no legal title, it could have no relation back, it would, in fact, be inoperative against the mortgage and the purchaser under the decree. What effect might be given to a deed presenting such a confusion of dates and interests and operations need not be conjectured. Being certainly ineffectual to pass the legal title to a large but undefined portion of the land, it must be deemed ineffectual, as against the mortgagee, to pass the legal title to any portion of it. On every ground, therefore, the sale and deed must, in this contest, be considered as ineffectual to pass any legal title, so as to overreach and defeat the title derived under the mortgage. It is scarcely necessary to add, that the subsequent deed of confirmation, being the private act of Algeo, posterior to the mortgage, and the suit for its foreclosure, can avail nothing.
Whether the lien in favor of the execution is extinguished, or may be revived by the quashal of the return, as to the sale &c., or what remedy in law or equity the purchaser, or the creditor, may have, need not be decided in this case.
If the lien was extinguished, it formed no longer any incumbrance on the mortgage title, and could *281 not obstruct a recovery under it. If suspended, it was equally ineffectual while that state of things continued, Or, if still subsisting in favor, either of the plaintiff in the execution, or of the purchaser, it certainly was not confirmed into a legal title by the void sale and deed, and as it could not have protected the plaintiff in possession from the action of the defendant before the sale, it could not afterwards protect the purchaser against the defendant, or another holding his title; if that title, under the circumstances of the case, were prima facie sufficient to authorize a recovery.
Possession by the defendant in an execution, of the land on which it is levied, is such evidence of title held by him, and transferred to the purchaser under the ex'on, as will be prima facie sufficient, as between them, to authorize a recovery in eject. by the purchaser. And, if the def't is out of possession, and the sale under the ex'on void, he, or his alienee, might, upon the same evidence, recover against the purchaser, or his alienee; so also, might the prior alienee of the defendant against his subsequent alienee.
A purchase of land at a sheriff's sale, reception of the deed from the sheriff, and the possession from the defendant, constitute such an admission on the part of the purchaser, of title in the defendant, as will be sufficient, prima fade, to enable the alienee of the defendant—the sale under the ex’on being void—to recover in eject, against the purchaser under the ex’on.—For, in a contest between two titles derived, from one common source, the eldest must prevail.
Third. We proceed, then, to the third question above stated, viz: Is the possession of the mortgagor, prior to the date of the levy and of the mortgage, and continued down until delivered to the defendants, such title, or evidence of title, in Algeo, as to authorize a recovery, by the plaintiff, holding that title, against the defendants, coming into possession by the subsequent act of the mortgagor. In the cases of Campbell vs. Roberts, 3. Marsh. 623-4, and in Locke & Fleming vs. Coleman, Butts vs. Chinn, and Million vs. Riley, above cited, it is in substance decided that, as between the purchaser under an execution, and the defendant therein, the possession of the latter, prior to the levy of the execution, is, prima facie, sufficient evidence of title in the defendant before the sale, and in the purchaser afterwards, to authorize a recovery in ejectment by the latter. And it seems to us that, on the same principle, the defendant, if he is out of possession, in consequence of a void sale and deed under execution, might recover in ejectment against the purchaser, or his aliepee, on the same evidence. And that, as the defendant might recover on this evidence, so might his alienee; and so might his prior alienee against his subsequent alienee; which is the present case.
The. question, on this part of the case, is not whether the deiendants are precluded from controverting the title of Algeo, or his prior alienee, but whether the *282 facts of their having purchased the lots as his, under an execution against him, while he was in possession, and their having afterwards received the possession from him, and a conveyance from the officer, in consequence of their purchase, do not, as against them and in favor of the prior alienee, constitute presumptive or ‘prima fade evidence of title in Algeo. Such acts seem to imply an admission on the part of the purchaser, and therefore, furnish against him presumptive evidence, that the defendant in the execution had title. Possession is itself some evidence of title; and it seems to be reasonable and conformable to the general principles of the law, that in a contest between two persons claiming under the same individual, from whom one of them- has obtained the possession, no other title being shown, the eldest legal conveyance from the common source should prevail. Such a conveyance confers upon the alienee whatever title the grantor had, and entitles him to the benefit of his possession, either as a title in itself, or as evidence of title. According to these views, there is no substantial error in the opinions of the Circuit Court, and the plaintiff, on the evidence before the jury, was entitled to recover on the demise of Crow.
A party whose possession and only title was derived from a mortgagor after the date of the mortgage, sustains the same relation to the mortgagee, that the mortgagor was subject to; and — whatever might be the effect of another,’ paramount, title in himself — he cannot defeat the mortgagee’s action by showing an outstanding title in a stranger : evidence of such title may, therefore, be rejected.
Fourth. In addition to the evidence which has beep stated, the defendants, for the alleged purpose of showing that Algeo had no title when he executed the mortgage, and when the lots were sold by the Marshal, offered to read an order of the County Court of Breckinridge county, made in 1801, purporting to establish the; town of Iiardinsburg, and to vest the title in Trustees, who are not named. But this evidence being objected to by the plaintiff, was rejeoted as inadmissible; and the propriety of this rejection, presents the last question to be considered. Waiving all enquiry into the efficacy of this order, and supposing it to have invested the Trustees with the title — we are of opinion that it was properly rejected: because, Addison, having come into possession under Algeo, the mortgagor, by his consent, and in fact by contract with him, as is to be assumed from the facts as stated above, deriving no aid from the Marshal’s sale and deed, and showing no title in himself *283 but that which he claims through Algeo, must be considered as sustaining the same obligations to the mortgagee as Algeo himself. And the subsequent deed from Algeo to Addison, however it might have absolved the latter from his obligations to the former, did not absolve him from his obligations to the mortgagee, and was especially inoperative against the mortgage-title, because made pendente lite. Without however deciding whether Addison might have shown a title in himself, independent of that which he claimed from Algeo, we are of opinion that he could not, in this contest, avail himself of an outstanding title to defeat the action. His co-defendant, Calhoun, being his tenant, was alike restricted in his defence.
There being, in our opinion, no error in the proceedings and judgment, to the prejudice of the appellants, the judgment is affirmed.