Ejectment.

*Case* 106.

## Owens *vs* Patteson.

APPEAL FROM THE GREEN CIRCUIT.

*Execution lien.    Notice.*

*April 25.*

JUDGE MARSHALL delivered the opinion of the Court.

THIS action of ejectment was brought on the demise of Patteson, under a sheriff's deed, made to him as purchaser of the land in contest, against Owens who had received a deed from the defendant in the execution, between the date of the levy and the sale by the Sheriff. And the only question, which we deem it necessary to decide, is, whether upon the facts appearing in connection with the levy and sale, and deed, the conveyance to Owens, is overreached, by the subsequent sale and deed of the Sheriff to Patteson.

The case stated.

The *fieri facias* which was in favor of Patteson, and against Hawks, was levied on the land, on the 15th of January, 1841, and was returnable in the latter part of the same month. It was not in fact returned, until the 7th of November, 1843, nearly three years after the levy. On the same day a *venditioni exponas* issued, and on the 17th of November, 1843, two years and ten months after the levy, the land was sold, and Patteson, having become the purchaser, at the price of $231 25, a deed was made to him, by the Sheriff, on the 29th of December,

A *fi. fa.* was levied upon land and held up by the Sheriff for nearly 3 years, at the expiration of 17 months from the levy, a purchase was made in good faith, without a knowledge of the levy, and a conveyance made, at the ex-

following. It appears from an endorsement of the Sheriff, on the *fieri facias* execution that $90 50, were paid thereon in August, 1841. Another endorsement, signed by the Sheriff but without date, is of the following tenor: "The plaintiff directs this *fi. fa.* to be returned and a *venditioni exponas* to be taken out, and the land levied on to be sold." The promptness with which a *venditioni exponas* was issued and a sale made, after the return of the *fi. fa.* lead fairly to the inference that the direction to return the execution, was obeyed with a like promptness, and consequently, that the plaintiff had not required a return, until about the time when it was made, and that in fact the execution had been held up, by his direction or with his assent, for the ease of the defendant, or by arrangement with him. The payment made to the Sheriff in August, 1841, long after the execution should have been returned, corroberates this inference, which is perhaps sufficiently authorized by the single fact that the plaintiff, who had it in his power to coerce a return by the Sheriff, took no steps of that sort at either of the terms of the Circuit Court, between the 15th day of January 1841, and the 7th day of November 1843.

In this interval, on the 20th of June 1842, seventeen months after the levy, Hawks conveyed the land to Owens, who so far as appears had no knowledge of the levy, for the consideration of $400, acknowledged in the deed to have been paid in hand. According to the principles settled in the case of *Addison, &c.,* vs *Crow, &c.,* (5 *Dana,* 273 to 277,) even if there was at the date of this deed a subsisting lien under the levy, the title passed by the the deed to Owens, subject to be overreached only by a subsequent valid sale and conveyance by the Sheriff. The question then is, whether upon the facts stated, we can pronounce as matter of law, and against the *bona fide* purchase of Owens, that there was at the time of that purchase a subsisting lien under the levy, and that it continued seventeen months longer, so as to uphold the subsequent sale and conveyance under the *venditioni exponas,* and give them relation back to the date of the levy or the delivery of the *fi. fa.*

It is true, that in most of the cases on the subject, this Court has said in general terms, that the title under an execution sale, relates back to the date of the levy or of the delivery to the Sheriff, so as to overreach an intermediate conveyance. But the absolute declaration of a correct general principle in cases not calling for discrimination or qualification, does not imply that the principle as announced is universal, unconditional and without exception. On the contrary, as it does not appear that in any of those cases there was any question or room for question, as to the loss or abandonment of the lien, either on the ground of fraud, laches or otherwise, the principle as announced in those cases must be understood as expressing the effect of regular valid proceedings under a levy. In the cases of *Butts* vs *Chinn*, (4 *J. J. Marshall*, 641;) *Million* vs *Riley*, (1 *Dana*, 359;) *Chinn* vs *Butts*, (3 *Dana*, 547;) *and Halley* vs *Oldham*, (5 *B. Monroe*, 233,) the proposition is laid down in general and unqualified terms, that to effectuate the purposes of the statute giving the lien, a levy, sale and conveyance under an execution, relate back so as to overreach any conveyance made by the debtor after the execution came to the officers hands. As all of these acts, however, have their effect under the authority of an execution, the absolute force of which is limited to a short period, not exceeding 90 days, it might be implied even from the terms of the general proposition referring to these acts as done under the execution, that they are contemplated as being done, either while the writ of *fi. fa.* is in force, or within some convenient and reasonable period afterwards, and that it is to these acts when thus performed that the effect of overreaching intermediate conveyances by the debtor is ascribed. In the case of *Addison, &c.*, vs *Crow, &c.*, (5 *Dana*, 275,) the Court say the law, "holds the land subject to regular proceedings under the execution and ultimately to sale and conveyance notwithstanding such alienation." In the case of *Halley* vs *Oldham*, (5 *B. Monroe*, 138,) the levy, sale and conveyance are regarded as connecting themselves with the delivery of the execution to the officer, so as to form one single transaction, which so far as regards the passage of title from the debtor, takes date from the first

act which gives the lien.   And it is thus that the deed of the Sheriff has the effect of overreaching the prior intermediate conveyance by the debtor.   But can the proceedings under this execution, which, though levied in January 1841, and returnable in that month, was never returned until November 1843, be regarded as regular ?   Or can the levy, kept secret for nearly three years, be regarded, as against the intermediate purchaser who was ignorant of it, as being so connected with the subsequent sale by the Sheriff, as to form one transaction, taking date from the levy or the delivery of the execution under which it was made ?   The question in this case is, *must* the sale under the circumstances stated and without any explanation, be regarded as relating back to the levy so as to give the prior title to the execution purchaser ?   And to this question we think there is nothing in the cases referred to which prescribes an affirmative answer.

On recurring to the statutes we find nothing in them which sanctions the idea that they intend to give to the execution creditor, by means of a secret levy, a hidden lien which when brought to light at any future period, however distant, shall give to a subsequent sale made professedly under that levy, the effect of overreaching the title of an intermediate *bona fide* purchaser.   Without detailing the statutory provisions, it is sufficient to state, 1st. That the statutes provide for the prompt return of all proceedings under executions, and therefore for the publicity of every act which can either give or continue the lien upon the debtors property ; 2d. That they provide for and contemplate a complete execution, within a convenient period, of the mandate of the writ of *fieri facias*, by the seisure and sale of the debtors estate if necessary for the satisfaction of the debt ; and 3d. That they place it in the power of the creditor to coerce a performance of the Sheriff's duty in returning the writ, and completing the execution of its mandate.   The result of all is, that the statutes intend to give no secret lien ; that they intend to secure by means of the execution and the proceedings which it authorises the just fruits of a reasonable diligence ; that they intend to provide for a creditor who in good faith resorts to the legal remedy for the coercion of his

debt, and that they do not intend to furnish him with the means of decieving others or of enabling his debtor to do so.

If the proceedings under an execution are regular by an open levy, a prompt return of the fact, and a ,sale within reasonable and conveniem time, or upon failure of any of these duties on the part of the Sheriff, by steps taken within reasonable time to coerce their performance, there can be no *bona fide* purchase in the interval, as against the execution. For under such circumstances, the law would justly impute a knowledge of the facts to every one who should deal with the property. And there would be neither injustice nor injury, in declaring any intermediate purchase ineffectual to defeat the execution. Indeed a contrary decision would defeat the objects of the statute. But the present case is entirely different. So far from the proceeding being such as to give the intended publicity to the lien, whereby every intermedler would have been affected with notice, or such as to enforce the intended promptness of action under the execution, whereby the continuity of the lien would be kept up so as to furnish reasonable ground for connecting the sale with the levy, the creditor has, in effect, concealed his levy and lien for nearly three years ; and after having thus withheld the appointed means of knowledge, and authorized the presumption that the execution which had thus lain dormant, was satisfied, or that the lien which it gave had never been perfected by a levy, or had been waived or abandoned, he claims against an intermediate purchaser, actually ignorant of the levy, and who by his own *laches* or collusion with the debtor, has been encouraged to deal for the property, the benefit of the principle which is applied to regular and open proceedings. As against the debtor himself, for whose benefit and with whose assent any delay occurring under the execution, might be presumed to have been allowed, the lien and power to sell might perhaps be regarded as subsisting for any length of time, until the debt should be discharged. But as against an intermediate purchaser, coming in under such circumstances as characterize this case, it seems to us that it is not requisite for the effectuation of the pur-

poses of the statute or of the principles of the general law, but would be a violation of both, to decide that the Sheriff's deed to Patteson overreached the prior deed of Hawks to Owens. And we are not satisfied that the case would be essentially different even if Owens had heard of the mere fact of levy, made seventeen months before his purchase, and not returned nor otherwise proceeded on until seventeen months afterwards.

Wherefore, the judgment is reversed and the cause remanded, for a new trial, in conformity with the principles of this opinion.

*Spencer* for appellant: *B. & A. Monroe and Buckner* for appellee.