WARNER
vs
EVERETT.

---

CHANCERY.

Case 69.

June 14.

Case stated.

# Warner *vs* Everett, &c.

APPEAL FROM THE MONTGOMERY CIRCUIT.

*Attachments in Chancery.    Mortgages.    Frauds.*

JUDGE SIMPSON delivered the opinion of the Court.

IN the year 1841, Everett filed his bill in chancery, and sued out an attachment thereon, against James Warner, alledging that the defendant was indebted to him by note, in several sums of money, and that he held on him two debts secured by mortgages, one of which had been executed by

him to Ellis & White, the other to Ellis alone ; the benefit of both of which he claimed by assignment from the mortgagees. Both mortgages embraced the slaves Maria and her child, and no other property. He charged in his bill that he believed the defendant, Warner, would sell, convey, or otherwise dispose of said slaves, with the intent to hinder, delay and defraud him in the collection of his debts, unless prevented by attachment—and he also made the mortgagees, Ellis and White, defendants.

By virtue of Everett's attachment, the Sheriff took the slaves, Maria and her two children, she having been delivered of another child after the date of said mortgages, and Warner having failed to execute bond for their delivery, the Sheriff kept the possession of them, and handed them over to a bailee.

Afterwards, on the 19th of January, 1842, the defendant, James Warner, executed to his brother Joseph Warner, a bill of sale for the three slaves, at the price of $750, to be paid, by first discharging the debts secured by mortgage on the slaves, and the balance to be applied to the payment of execution debts for which Joseph Warner was bound as James Warner's security.

During the pendency of the chancery suit, Everett instituted an action at law, upon one of the debts secured by note, which he had set up and claimed in his bill, and having obtained a judgment and sued out an execution, had it levied on the slaves Maria and her children, and became himself the purchaser of them, at the price of $182 36 cents, at a sale under the execution, made by the Sheriff.

This execution did not issue until some time after the sale made by James Warner to his brother Joseph. The slaves were held by the Sheriff under the attachment, when both the sales were made.

Besides the mortgage debts claimed by Everett, there were three other mortgages on said slaves, at the time that Joseph Warner purchased them from his brother, one given to William White, which is elder than either of the others, one to Walker Chambers, and the other to Daniel Walker ; the mortgages transferred to Everett being junior in date to all the others.

Joseph Warner having after his purchase of the slaves, paid to William White the greater part of the debt due to him, obtained from him an assignment of his mortgage, and in 1843, filed his bill in chancery, setting out all these facts, making Everett and the mortgagees, and Jas. Warner defendants, and claiming the right to redeem and hold the slaves by paying the debts remaining due on the several mortgages.

These suits were consolidated and heard together, and a decree rendered directing a sale of the slaves for the payment of all the debts secured by the mortgages, and also the debts due to Everett, not embraced by the mortgages.

Two questions present themselves for our consideration:

First: Has Everett shown himself entitled to a decree for the debts not secured by mortgage.

Secondly: Is the purchase made by Joseph Warner from his brother, legal and valid.

If Everett's attachment can be sustained, it must be on the ground that by making a sale of the attached property, after the institution of the suit, and during its pendency, an inference arises that an intention existed when the suit was brought, to make a fraudulent disposition of the property. If the sale be in itself fair, and made for the purpose of paying debts, and the proceeds so appropriated, it not being fraudulent when made, cannot by any fair process of reasoning, authorize the conclusion of a previous fraudulent intention.

A presumption is attempted to be raised against its fairness, upon the ground that the bill of sale recites the liability of Joseph Warner as security in executions, when two of the debts afterwards paid by him, the one due to F. W. Allen and the other to McNeil and Thomas, had not then been replevied by him as security. But it appears that for these two debts, he was security upon the notes; that execution had issued upon one and was in the hands of the officer, and although no judgment had been obtained on the other, process had issued upon it, and been executed upon him and his brother. He was

thus as security, liable for both these debts at the time, and the recital in the bill of sale is substantially true.

The evidence, so far from justifying Everett in suing out the attachment, shows that the defendant, James Warner, had, at the time that Everett's suit was brought, other property which he kept in his possession for some considerable time, not evincing any disposition to secrete it, or to place it out of the reach of his creditors, although debts were constantly pressing him, and his property was all exhausted in about a year after Everett had brought his suit against him. No single act or declaration is proved to have occurred before the suit was brought, that would tend to show the existence of a fraudulent intention to place his property beyond the reach of his creditors. He was no doubt very much involved in debt, even beyond his means of payment; but that fact did not, of itself, justify a creditor to sue out an attachment, and thus attempt, by a perversion of the object of our statute which authorizes this manner of proceeding in cases where fraud is contemplated, to obtain an undue advantage over other creditors, who being unwilling to make the oath required in such cases, are pursuing the ordinary mode for the collection of their debts.

It is, however, urged on the part of Everett, that he had a right, although his attachment cannot be sustained, to come into a Court of chancery as a general creditor, for the purpose of having the mortgages foreclosed and the residue of the proceeds of the sales of the property, if any, after the mortgage debts were discharged, applied to the payment of his debts. It is only necessary, however, on this point, to remark, that to enable a creditor to come into chancery for this purpose, he must have obtained a judgment, and be in a position to require the Chancellor to give him aid, in the removal of an incumbrance that forms an obstacle to the full success of his legal remedy.

And although Everett had obtained a transfer of two of the mortgages, and had on that ground a right to institute his suit, yet as they were transferred to him merely for collection, having no interest in them himself, and the debts due to him having been contracted before the trans-

<div style="margin">
WARNER
vs
EVERETT.

To sustain an attachment in chancery, it is necessary to show a fraudulent intent before the suing out of the attachment; to prove it to have originated afterwards will not do.

To authorize a creditor to come into chancery to ask the foreclosure of mortgages and subject the property mortgaged to the payment of his debt, he must have judgment.
</div>

fer, and not on the faith or credit of the property mort-gaged, the doctrine of tacking, were it ever recognized in this State, in its most extensive application, would not embrace this case.

The first question must, therefore, be decided against Everett.

It has been held in relation to personal property, that notwithstanding the lien in favor of an execution in the officer's hands, the owner of the property may, by a sale of it, pass the legal title to the vendee, subject to be defeated by a subsequent levy and sale under the same execution: *Harrison* vs *Wilson*, (2 *Marshall*, 551.) The same doctrine was recognized as applicable to real property, in the case of *Addison, &c.* vs *Crow, &c.* (5 *Dana*, 271,) and a purchaser from the defendant in the execution was considered as invested with whatever title the defendant had, subject to be overreached and defeated by a regular sale and conveyance.

In analogy to the doctrine established by these cases, we are of opinion that the owner of property which has been seized by attachment out of chancery, may, during the continuance of such seizure, sell and dispose of such title as he has to the property, and the purchaser will hold it, subject to the final decision and disposition of the suit in chancery, and the attachment attempting to create the lien.

A debtor may sell property bound by execution, or his right therein, subject to the execution, (2 *Marsh.*, 351; 5 *Dana*, 271,) So may the owner of property attached.

The attachment in this case not having been sustained, it follows that the purchase was not affected by it, and if in other respects, it be good and valid, it cannot be successfully assailed.

We are not able to perceive any ground upon which it can be impeached. The debts due by mortgage, and the debts for which Joseph Warner was bound as the security of his brother, at the date of the bill of sale, and which he has since paid, except a balance due on the mortgage debts for which the property is still liable, exceed considerably, the price stipulated to be paid, and the actual value of the slaves at that time. The purchase by Everett under his execution, did not invest him with any title to the property. The defendant in the execution had, before it issued, sold the property to Joseph Warner, and con-

sequently, were the sale not liable to the objection that the property was under attachment for the same debt, at the time it was made, still as the defendant in the execution had no title whatever, none could pass to the purchaser.

It is also insisted that the sale is fraudulent, inasmuch as the possession did not accompany the sale. Neither the reason upon which this doctrine is founded, nor the doctrine itself, applies in a case like this. The possession must remain with the vendor as well as fail to go with and follow the title, in absolute sales, to make them fraudulent. This rule of law has no application where the vendor has not the possession at the time of the sale, and where consequently, his title to the property, as well as his right to the possession of it, passes to the vendee, and nothing remains with him, to create in his favor a false credit with those persons with whom he may have dealings subsequently.

It follows, therefore, that the decree of the Circuit Court is erroneous. Everett's attachment should have been dismissed, and no costs decreed to him in his suit, on account of keeping the slaves, or other expenditures, as under the circumstances he should pay his own costs in that case, except so far as costs may have accrued to foreclose the mortgages.

The complainant, Joseph Warner, has a right to redeem the slaves, by paying the debts and interest thereon, remaining due and unpaid in the mortgages to White and Ellis, to Daniel Walker and to Walker Chambers, as reported by the commissioner.

The other mortgages have been paid off and satisfied by him. He will have a right to his costs against Everett.

The decree of the Circuit Court is reversed, and cause remanded for further proceedings, consistent with this opinion.

*Hanson, Daniel and G. Davis* for appellant; *Apperson and Peters* for appellee.