## Gearheart *vs* Tharp.

### APPEAL FROM THE MARION CIRCUIT.

*Conveyances. Sales of land under execution.*

TRESPASS.

Case 10.

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

December 19.

THIS action of trespass *quere clausum fregit*, was brought by Tharp against Gearheart, for pulling down the fence of the plaintiff. The defendant pleaded *liberum tenementum*; on which the plaintiff new assigned, describing the closes in which, &c., as certain closes in Marion county, called and known as the Mullens farm, and then giving a general description of the abuttals, proceeds to state the boundary as beginning at Wm. Ware's north east corner, two ash trees, and running by course and distance, to certain objects east, south and west, to a line of said Ware's survey, and thence with said line, north 250 poles, to the beginning. The defendant pleaded to the new assignment, that at the time when, &c., he was the owner, in fee simple, of the closes named in the new assignment. And upon this point the issue was taken. Under this issue it devolved

Case stated.

upon the defendant to make out title in himself to the *locus in quo,* which he attempted to do by several conveyances from William Ware, the patentee, whose line is called for as above. This line, as represented in the new assignment, and as called for in the patent of Ware, runs due south from the two ash trees named as the north east corner. It would seem from the face of the pleading, that the plaintiff was complaining of a trespass on the east side of that line, and that the defendant admitting the *locus in quo* to be on the east of that line, claims to be the owner of it. But the evidence discloses the fact that the line referred to is the eastern boundary of Ware's patent, under which the defendant claims, and that the real question in dispute between the parties, is as to the true position of that line. The action was brought for pulling down the fence on the western extremity of the Mullens farm, at a place to the westward of a line running due south from the ash trees, according to the present magnetic meredian, but to the eastward of the line as claimed by the plaintiff. The *locus in quo* as unequivocally fixed by the evidence on both sides, is the space contained between the two lines claimed by the parties respectively, as the eastern boundary of Ware, under whom the defendant claims, which is the western boundary of the land claimed by the plaintiff under a coterminous patent. If the plea to the new assignment should be understood as claiming title to the close as described by metes and bounds in the new assignment, then it would follow that although the defendant might succeed in establishing the line claimed by him, and in showing title to the place in which the act complained of was really committed, he would fail in showing title to any part of the land described in the new assignment, and would, consequently, fail in establishing a justification for the trespass admitted to have been committed within the boundaries set out by the plaintiff. The consequence of which would be that the plaintiff, without proving any such trespass, would be entitled to a verdict for nominal damages at least.

This view of the pleadings and issue seems to have been taken in the Circuit Court, after the parties had shown by the evidence on each side, that the real controversy was whether the defendant was the owner of, (or had the right to enter upon,) the space between the two lines above spoken of, and within which the act for which the action was brought, was committed. The plaintiff in the action, defendant here, insists upon the same view in this Court as justifying the instructions given, to the jury and the verdict in his favor for one cent in damages, whatever may be the proof as to the position of the disputed line, and as to the title in the defendant on the west side of it. It is insisted on the other side, that while the position of the boundary line of Ware's patent referred to in the new assignment, may be and is uncertain, the position of the Mullens farm, also referred to as identifying the close in which, &c., is palpable and certain, and that the defendant, in claiming, by his plea, to be the owner of the close *named* in the new assignment, should be understood as referring to the plaintiff's description of the close by its name, and not by its boundaries. If this construction should be adopted, and it is the only one which would make the technical issue correspond with the actual issue between the parties, so that the real controversy might be tried and decided in this suit, then as the Mullens farm is situated on both sides of the line claimed by the defendant, his success in establishing that line and in proving title up to it on the western side, would also establish his side of the issue, by showing title in him to so much of the land described in the new assignment as included the place in which the trespass complained of was committed.

The difficulty or confusion in the pleadings arises from the fact that the plaintiff, in describing the close in which the alleged trespass was committed, refers to two criteria or means of identification, viz: the name and the boundaries. He contends that these are co-extensive, and identify the same land. The defendant contends that they are not co-extensive, but that the Mullens farm extends across and to the west of one of

the boundary lines stated in the new assignment; and that he has title to this western portion of it, in which the trespass was, in fact, committed. If the defendant had pleaded not guilty to the new assignment, the plaintiff would have been compelled to prove a trespass within the close described by him. But even then the question might have arisen, whether he would be confined to proof of a trespass within the boundaries set out by him, in which case the question as to the true position of the disputed line, would have been presented, or whether he might rely on a trespass within the Mullens farm, of which he was in possession, and outside of the boundary described. The true issue might have been distinctly presented by a plea stating that the Mullens farm extended on both sides of Ware's line, as referred to in the new assignment, that the western portion of it was within Ware's patent, and belonged to the defendant, and that he had entered upon it, &c. We are not prepared to say that the Circuit Court, looking to the course of the evidence on both sides as showing with certainty, what both parties intended and understood to be in issue between them, might not and should not have so construed the pleadings and the issue joined, as to embrace the real point in controversy. But it is not necessary to decide this point peremptorily, because, in our opinion, the defendant failed to make out title to any land within the patent of Ware, and as he pretended to none outside of that patent, he showed no title to the *locus in quo.*

Two of the deeds relied on by the defendant, and essential to his chain of title, were rejected by the Court. The first of these deeds being that from the patentee to the heirs of John D. Coleman, bears date in September, 1802, and appears to have been admitted to record in the proper county in Kentucky, in June, 1803, more than eight months after its date, upon the certificate of the Clerk of the County Court of Amherst county, in the State of Virginia, that it was acknowledged by the grantor in open Court, and ordered to be certified. The cases of *Taylor* vs *Shields' heirs*, (5 Littell, 225,) and *Bank of the Commonwealth* vs *Portman,*

A deed of conveyance to the heirs of J. D. C. is valid, and adding "agreeable to will," does not render it invalid.

(9 *Dana*, 112,) decide that a deed thus acknowledged, with the certificate of the clerk, and seal of the Court, may be properly admitted to record in this State at any time within eighteen months after its date, without the certificate of the presiding Magistrate or Judge; and we understand this deed to come within the principle of those cases. The objection that the deed purporting to be between Ware, of the one part, "and the heirs of John D. Coleman, agreeable to will," of the other part, is too vague in the description of the grantees, and especially in the absence of the will of J. D. Coleman, is, in our opinion, untenable. It was not necessary to name the individual grantees. The description of them as heirs is sufficient. And we are of opinion, that the words "agreeable to will," are not to be understood as limiting the description of the persons to whom the grant is to be made, but means nothing more than "according to the will." This construction is supported, if not rendered necessary by the fact, that in the granting part of the deed, and in the habendum, there is no reference to the will, but the conveyance is "to the heirs of the said John D. Coleman, and their heirs and assigns forever." So that the legal title passes to the heirs, to be held according to the will, and perhaps in trust for some of them. If then, as the certificate to this deed imports, the seal of office was attached to it, (though it is not copied or represented in the transcript before us,) the deed should not have been rejected.

But the deed from Cooper, the Sheriff, to Gearheart, purporting to convey the land as the property of Isaacs, in virtue of a sale under executions against him, shows that more land was sold than was necessary to satisfy the execution, an excess of about $300 having been produced. The same fact is also proved by oral testimony; and although this was done by the verbal consent and directions of Isaacs, who as a witness, states that he had received the excess, and was entirely satisfied with the sale, and had directed it, and offered to convey the land, yet we are of opinion, that according to the principle of *Pepper* vs *Commonwealth, for Thornton,* (6 *Monroe,* 27; and *Addison, &c.* vs *Crow and Jarvis,*

A deed by a sheriff for land under execution, where more land than was necessary to satisfy the execution was sold, is ineffectual to pass the title, (6 *Mon.* 27; 5 *Da.,* 271) without the defendant in the execution had united.

(5 *Dana,* 271,) and other cases decided by this Court, the deed as a conveyance by the Sheriff alone, must be held ineffectual to pass the title of Isaacs, and was therefore properly rejected. Whether the circumstances might have estopped Isaacs in an action of ejectment by Gearheart against him for the possession—or whether they might have supported a plea of license from Isaacs, we need not decide. The defendant undertook to show title in himself, and the deed being ineffectual for that purpose, and irrelevant for any other, there was no error in rejecting it. And the defendant having in the absence of that deed, or some other conveyance from Isaacs, wholly failed to make out title to any land in Ware's patent, and having failed to support his side of the issue, under the most favorable construction of it, he was not prejudiced by any instruction or opinion of the Court upon the trial, or in refusing a new trial.

Wherefore, the judgment is affirmed.

*Shuck* for appellant; *Rountree & Fogle and B. Hardin* for appellee.

