## No. 5 Mining Co. v. Bruce et al.

1. Under the statute of February 13, 1874 (page 213), in the trial of issues of fact in the probate courts, if a party would have a trial by a jury of twelve, he shall make demand for a jury of that number before the *venire* is issued, and where the record failed to show either a waiver of, or a demand for, a jury of twelve, *held*, that the cause was properly tried by a jury of six.

2. Where there was no motion in the court below for a new trial this court will not examine into the evidence to ascertain whether it supports the verdict, but may do so for the purpose of determining the character of the instructions.

3. In an action upon a naked contract to sink a mining shaft a certain number of feet at a specified sum per foot, without any specific agreement for timbering, *held*, in the absence of such agreement, and in the absence of proof of custom requiring such work in a shaft, that timbering was no part of the contract.

4. Error may not be assigned upon the giving of a merely unnecessary instruction.

5. Where one is bound by contract to two persons severally, and only severally (their interests being also several), they not only may, but *must* sue upon it severally, and in a joint action the plaintiffs may not be permitted, over defendant's objection, to introduce evidence of a several contract.

6. Instructions must be warranted by the evidence properly before the jury, and when an instruction is given, based upon evidence improperly in the record, the judgment will be reversed.

*Error to County Court of Clear Creek County.*

In the trial of this cause in the county court the record discloses the following evidence:

Bruce, one of the plaintiffs, testified : "Horton and I took contract for one hundred feet sinking at $20 a foot with water stipulation ; defendant was to pay expenses for the water ; sank sixty-one feet and timbered ; date of contract was October ; commenced sinking October 20, 1875 ; worked until December 20, 1875 ; sank twenty-five feet and stopped to work in engine room ; was told to do what was necessary to receive the machinery ; to do extra work necessary for hoisting ; they agreed to put in machinery, as soon as it was necessary, for hoisting ; we were to receive $4 per day, each ; he engaged us jointly ; there is $332 due for days' labor, my own individual time ; Horton's amounted to $258 ; the shaft at this time was forty-five feet ; day-work began in December ; resumed sinking in May ; sank two days in May ; quit July, 1876 ; received on account $1,433, including labor and contract ; balance due is $795 ; were to be paid monthly on contract ; got money we did get, as we could ; got last payment July, 1876 — $213.50 — the monthly installment ; the balance stated was then due during the first week of July, 1876 ; it had never been paid up according to contract since we commenced ; we didn't sink shaft the depth agreed on because we were not able to carry it on — we hadn't the money."

*Cross-examination :* "During July we were laid up on account of broken machinery ; during first three months of contract kept six men at work ; Teal didn't request to keep back 25 per cent of contract money, it was not the agreement ; whole contract was verbal ; we worked on the sinking together and the days' wages together ; up to December we had sunk twenty-four feet, and the water expenses were $31.50 ; in December, eleven feet, water expenses were $42 ; water expenses in May were $341 ; we checked the time bailing ;

Teal was superintendent of the company; was down in the shaft once, saw our timbering, and said that would do; he told us to hire men to put in the machinery, and on water expenses, and he would pay the bill; we employed the men to work for the company; they told us to do the extra work, it had to be done."

Horton, plaintiff, after stating, in substance, same as Bruce, testified: "they owed us for sixty-one feet on the contract at $20 per foot, $1,220, for work done by the day by me, $258; by Bruce, $332."

*Cross-examination:* "We based the charge for water expenses on inconvenience and loss of time; states the quantity of water; we drained the Equator shaft, that is what made the water so great; we estimated the water increased our work one-half; defendant accepted our work and agreed to pay; I had my own days' wages, and I think Bruce put in both bills; each kept his own money."

Motion to strike out all evidence of days' wages, first testified under objection, by said Bruce and said Horton; motion overruled; exception.

Simmons, sworn for defendant, testified as to contract and payments to plaintiff of balance due, $137, including $50 which directors agreed to allow for water; "for days' work there is still due Horton $200, Bruce $128; plaintiffs were employed to work by the day; orders were to employ them individually."

*Cross-examination:* "Am secretary of the company; they had been at work three months before Hambel and I were authorized to act for the company."

George Teal, sworn for defendant: "Was director; proved custom for contractor to take care of water; examined the shaft; proved defective work; some timbers were crushed in and broken; I cannot give an estimate in figures; the superintendent should not have allowed it to be done as it

was; plaintiff presented bill at Hall's office; they brought in a claim for water expenses; it was repudiated; James Teal there read a statement of contract in their presence; don't know what objections were made; the agreement was, 25 per cent was to be kept back.

G. W. Hall, sworn for defendant: "Examined shaft; timbers broken and work badly done; have already spent from $300 to $400 to secure it; will have to be re-timbered; it will cost at least $700 in work, besides the timbers to repair; I am president of the company."

William M. Treglone, sworn for defendant, stated: "That timbering put in by Bruce would have to be replaced on account of bad workmanship; to replace will cost double the price of original timbering."

Admitted in writing that if James Teal were present he would swear that, on the contrary, plaintiffs were to take care of the water at their own charges.

J. T. Horton, recalled, proved that James Teal, superintendent of the work, was in the shaft several times, and that the work had been accepted by the company; he found no fault with the work; he was superintendent for the company.

The jury found for the plaintiffs, assessing their damages at $427, for which amount judgment was rendered. And thereupon the defendant below sued out this writ of error.

Messrs. Morrison & White, for plaintiff in error.

Mr. W. T. Hughes and Mr. L. C. Rockwell, for defendants in error.

Stone, J. This action was brought by defendants in error, in assumpsit, to recover for work done in sinking a shaft on the mine of the plaintiff in error, upon a verbal contract therefor. The general issue was the only plea of the defendant below, on which issue was joined at the trial.

The first point made by the plaintiff in error that we are

called upon to notice, is that the case was tried by a jury of six, without waiver of the right to a jury of twelve.

The third section of the act amendatory of the law relating to probate courts, approved Feb. 13, 1874, declares that, "all issues of fact in said probate courts shall be tried by a jury of six men, unless both parties waive a trial by jury," etc. Section four of said act further provides that, "If at any time before the calling of the cause for trial, and before any *venire* shall have issued, either party shall demand a trial by a jury of twelve men, a jury of twelve men shall be summoned and impanelled, but the party demanding the same shall be required to advance and pay into court the sum of twenty dollars at the time of making such demand." A proper construction of these two provisions of the statute in force at the time seems to imply that the trial shall be had by a jury of six men, unless a trial by jury shall be waived by both parties, or unless one party or the other shall demand a trial by a jury of twelve. The record in this case does not show that a jury was waived, nor that a jury of twelve was demanded by either party, and the case was therefor properly tried by a jury of six.

The statute referred to authorizes the issuing of a special *venire* for a jury in such cases, and hence the fourth error assigned is unsupported.

The first, second, fifth, sixth, tenth, eleventh and twelfth assignments of error appear to have been waived by counsel for plaintiff in error, and are not argued in their briefs, so that the only alleged errors remaining to be noticed arise out of the giving and refusing of instructions.

Since there was no motion for a new trial in the court below, the evidence is not before us for the purpose of determining whether it supports the verdict or not, and we have therefore examined it only for the purpose of determining the character of the instructions in question.

The seventh assignment of error is that the court erred in

refusing to give to the jury the following instruction, prayed by plaintiff in error, to wit :

"The court instructs the jury that every contract to do work and labor is presumed to be a contract to do such work and labor in a good and workmanlike manner, unless the contrary is proved, and if the jury find from the evidence that the work of timbering in this case was not done in a good and workmanlike manner, the jury should allow against the plaintiff's claim the amount expended, or which must yet be expended, to make it a good and workmanlike job."

The first clause of this instruction is undoubtedly true as a rule applicable to contracts for works, but the latter portion depends for its correctness upon the state of facts disclosed by the evidence.

Neither the contract as set out in the pleadings, nor the evidence, shows that there was any agreement that defendants in error were to timber the shaft. It was a naked agreement to sink a shaft so many feet for so much money per foot. Had the contract specifically required the defendants in error to timber the shaft, they would of course have been bound to do such work in a good and workmanlike manner, but in the absence of such agreement, or in the absence of proof of custom requiring such work in sinking a mining shaft, we are left to infer that such timbering by defendants in error was voluntary on their part, and for the purpose of protecting themselves in their work, and whether permanent or temporary, good or bad in its character, it in no way affected the contract for sinking the shaft.

Under this state of facts shown by the testimony, the instruction was inapplicable and erroneous, and was therefore properly refused.

The errors, alleged in the eighth and ninth assignments, are for the giving of the two following instructions.

"The court instructs the jury that if the Number Five Mining Co. agreed to pay the plaintiffs for sinking down, and the expenses in bailing water, etc., monthly install-

ments for the same, and failed to do so, then the plaintiffs were justified in giving up the job, and may collect from the defendants any and all moneys reserved by the defendants as a forfeiture."

"The court further instructs the jury that if the defendant hired the plaintiffs jointly to do the work in the chamber by the day, they will find for the plaintiffs for at least the amount that the defendant admitted to be due the plaintiffs."

The first of these instructions was perhaps unnecessary, since no defense seems to have been made on the ground that the "job" was not completed, and the reservation of twenty-five per cent of the amount due for work, as it accrued monthly, does not appear to have been made on that account.

The second instruction has reference to extra work done in excavating an engine room or chamber, and for which plaintiff in error agreed to pay by the day. As to the correctness of this instruction, I disagree with the majority of the court, and hence state my own views and conclusions upon the point involved.

Bruce, as witness, testified that the defendants in error were engaged jointly to do this work, at the price of four dollars a day each. The secretary of the company testified that there was yet due on this work, "Horton, $200; Bruce, $128." That is to say, there was admitted to be due $328, of which $200 was for days' work done by Horton and $128 for like work done by Bruce, aside from the contract for work in sinking the shaft. I can see no difference between this manner of keeping the account with respect to the work done by the contractors themselves, and what would have been the case if the contractors had hired other men to do the same work. The plaintiff in error would in either case be bound to pay the amount due for all the days' work, leaving the contractors to divide it between themselves, as they chose, or as they were respectively entitled to it. It is sometimes not without difficulty.

that a line of distinction can be drawn between contracts that are joint and those that are several in their nature. Occasionally a contract seems to partake of both natures; and again a contract is found which is joint in its main scope and object, but which contains one or more covenants that are several, or *vice versa.*

I understand a difference to exist between an interest which is common and one which is joint; and that where parties have a *common* interest in the claim made in an action, they *may* join as plaintiffs, but where they have a *joint* interest they must so join. For instance, tenants in common may maintain a joint action for rent due under a lease of the joint estate, all the covenants in which are *with them* jointly, although by an agreement, annexed to the lease and made a part thereof, it is stipulated what portion of the rent shall be paid to each. *Wall* v. *Hinds*, 4 Gray, 256. On the other hand, where a deed is executed by several grantors jointly, but their interests in the premises conveyed are distinct and several, any one of them may bring his separate action for his share of the purchase-money. *Leake* v. *Brown*, 43 Ill. 372. But it would be otherwise, I take it, if the interest so conveyed were undivided or joint.

It the parties to a contract have a joint interest in the fulfillment of the contract, and sustain a joint damage by a breach of the engagement they had entered into, they must all bring a joint action. *Wright* v. *Post*, 3 Conn. 142; and this, too, although the terms be several, or joint and several. *Capen* v. *Barrows*, 1 Gray, 376; 1 Chit. Pl. (16th Am. ed.) 9 and note *y;* and 11 note *n*, and cases cited. Where plaintiffs sue as joint contractors they, as a general rule, undoubtedly must show a joint interest in the subject-matter of the suit, and as to the general rule of pleading as to joint and several actions, applied to those, distinctly as such, I do not differ with my learned brethren. I regard this case as one of a class *sui generis*, perhaps, where the principal contract is essentially joint, although some of the incidents are several as relating to some of the parties. The

main contract here was for the sinking of a shaft which plaintiffs below jointly contracted to perform. The work of excavating for the engine room was an incident of the former, and the necessity for it arose out of the principal contract. Hence they may be said to have been jointly interested in the fulfillment of the subsidiary contract for this work, as a necessary part of the other, although from the obvious difficulty of estimating the cost of this work in the same manner as for the sinking of the shaft, the mode of payment was fixed to be by the day, at least such interest was a common one ; and I cannot think it would be doing violence to the rules of pleading and practice to allow the contractors to join in a single action for the price of their whole work, notwithstanding the price was to be differently computed for the different parts. If the work of excavation for the engine room had been the sole contract, or if pending the work on the shaft, the plaintiff below had engaged to go out and chop cord wood, or herd cattle for the company, by the day, I concede, of course, that such distinctly several contracts would create separate causes of action ; but the construction of the engine room was, as I infer from the evidence, for the purpose of placing an engine to hoist material out of the shaft they were sinking, and this work was inseparable from the other. Entertaining this view of the legal question presented, and considering that there was no dispute as to the amount due for this part of the work done by the day, either between the parties plaintiff and defendant, or between the plaintiffs themselves, and that it was only withheld by the company on the ground that the contract for sinking the shaft was not fulfilled, thereby treating it as a part of the entire contract, I think that to hold that a severance was necessary, and send this case back, thereby compelling each of the defendants in error to bring a separate suit for that part of his wages which is undisputed, involving three suits where, in my opinion, one would suffice, seems to me a refinement calculated rather to obstruct than to facilitate the administration of justice:

Thatcher, C. J.   With the conclusions reached by brother Stone, upon the several assignments of error, except that which relates to the right of the plaintiffs to recover in a joint action for the extra work, I am in accord. But I do not agree that the amount due each of the plaintiffs for such extra work was properly admissible in the joint action. The contract with the plaintiffs for sinking the shaft at an agreed price per foot was unquestionably a joint contract. But aside from this contract the company employed Bruce and Horton to work by the day in excavating an engine room. They were to receive each four dollars for every day they worked. Separate accounts were kept with each, and payments were made to them individually.

According to the testimony of the secretary of the company, the amount still due Horton on his separate account, for days' work, was $200, and the amount due Bruce individually, for days' work, was $128. Although the action was joint, the court permitted this evidence to go to the jury, and afterward denied the defendant's motion to exclude it, to which ruling the defendant excepted. It was not admissible in any view of the case, for any purpose. Its only tendency was to mislead the jury. The motion to exclude it should have been allowed. The simultaneous hiring of two or more persons to work by the day, each at a stipulated price per day, and each to be paid for the number of days he works, constitutes a several contract with each. "Where one is bound by contract to two persons (as B and C) severally and only severally (their interest being also several), they not only may, but it seems *must*, sue upon it separately; for the case is in effect that of two distinct contracts, though contained in one instrument." Gould's Plead., chap. 4, § 60.

The court instructed the jury "that if the defendant hired the plaintiffs jointly to do the work in the chamber by the day, they will find for the plaintiffs for at least the amount that the defendant admitted to be due the plaintiffs."

This instruction is not warranted by the evidence. If as a proposition of law, it is sound, it was nevertheless error to give it if there was no legal evidence upon which to base it. As we have already seen, the only evidence to which this instruction could apply, the court erroneously refused to exclude on motion of defendant. The instruction was misleading. Says Judge BREESE in *Ewing* v. *Runkle*, 20 Ill. 464 : "The court should not send the jury out into the broad field of conjecture, but confine them to the facts as proven, on which alone instructions can be properly raised."

The evidence neither proves nor tends to prove a *joint* contract. The agreement was in its nature several. As to the facts testified to, connected with their employment, there is no substantial variance, unless indeed the testimony of Bruce, that the contract was joint, is to be considered. But this was a mere legal conclusion of the witness, which the facts did not authorize, and to which it was not competent for the witness to speak.

In these views brother ELBERT concurs.

The judgment is reversed and the cause remanded for further proceedings.

*Reversed.*