Speelman v. Chaffee.

## SPEELMAN V. CHAFFEE.

1. The return of an execution "unsatisfied" by order of the plaintiff, after a delay of nine months after levy, must be taken as a release of the lien acquired not only by the execution, but in case of attachment, of the attachment lien also, so far at least as respects any junior liens.

2. The lien of attachment becomes merged in the judgment, and the only effect of the attachment thereafter is to preserve the priority of the lien, and this priority is maintained and enforced by issuance of execution. If the plaintiff neglects to issue execution and loses his judgment lien thereby, the attachment falls with it. The same degree of diligence is required to preserve the priority of lien as is required in cases of execution issued upon ordinary judgments without attachment. The proper office and use of an execution is to enforce the collection of a debt and not to create a security.

3. A direction by the execution creditor not to levy, or not to sell, is *prima facie* evidence that the writ is being used as a mere security.

4. In the absence of any statutory rule, and in the absence of fraud or *mala fides* on the part of the judgment creditor, *held*, that one year is a reasonable time within which to issue execution after judgment obtained where personal property has been attached.

5. Where the same officer holds more than one writ, differing in priority, he may sell under the junior, and the property cannot be taken under the senior writ from the purchaser; the proceeds, however, must be applied to the senior writ. But to pass title to the purchaser in such case the sale must be fully consummated, the money paid and the property delivered.

6. A purchaser at execution sale under his own execution, may not be required to pay the money to the officer, further than the costs of others; but if there be a dispute about the application of the proceeds of sale in case of more than one writ, the officer may refuse to deliver without payment or may sell again.

*Appeal from District Court of Boulder County.*

THE facts are stated in the opinion.

Messrs. GEORGE and FAUNTLEROY, for appellant.

Mr. L. C. ROCKWELL, for appellee.

STONE, J. This case was tried in the court below without the intervention of a jury, upon the following agreed state-

ment of facts, and the appeal is taken from the judgment of the court entered upon the finding of the judge therein.

First. That in October, 1875, George C. Corning brought suit by attachment against the Mining Company Nederland, which was a foreign corporation organized under the laws of Holland, which writ was made returnable to the January term of the district court in and for Boulder county, Colorado, A. D. 1876.

The said writ was levied upon all the real estate owned by said company, and situate in the then territory of Colorado.

That upon the 18th day of January, A. D. 1876, the company appeared in said suit and filed a plea, and upon the 18th day of January, A. D. 1876, judgment was rendered in said suit by said court for the plaintiff, and against said company for thirty-two thousand four hundred and ninety dollars.

Second. That upon the fifth day of January, A. D. 1876, Jerome B. Chaffee commenced a suit by attachment against said Mining Company Nederland, which writ was also returnable to the January term of the district court, in and for said Boulder county, Colorado, and was levied upon the identical real estate which the writ in the Corning case was levied upon, and in addition thereto the writ levied upon a large quantity of personal property of said mining company.

That said suit was continued from the January to the July term of said district court, 1876, when judgment was rendered thereon in favor of Chaffee for forty-seven thousand nine hundred ninety-three and $\frac{33}{100}$ dollars, against said company.

Third. That upon the 5th day of January, A. D. 1876, Marc. A. Shaffenburg and Moses Anker, partners, as Anker & Shaffenburg, also commenced a suit by attachment against said Mining Company Nederland, which writ was made returnable to the January term, 1876, of the district court in and for Boulder county, Colorado, and was levied upon the identical real estate and personal property of said Mining Company Nederland, which the writ of attachment in the Chaffee case was levied upon.

That upon the 19th day of July, A. D. 1876, the said district court rendered judgment in said case in favor of Anker & Shaffenburg and against the said company, for fourteen thousand four hundred and twenty-seven $\frac{86}{100}$ dollars ($14,427.86).

Fourth. That upon the 5th day of January, A. D. 1876, Moses Anker brought suit by attachment against said Mining Company Nederland, returnable to the said January term of the district court in and for Boulder county, Colorado; which writ was levied upon the identical real estate and personal property, which was seized under the writ of attachment in the said case of Chaffee against the said Mining Company Nederland, and said case was continued from term to term until the February term, 1877, of said court.

That upon the 9th day of February, A. D. 1877, judgment was rendered in said case in favor of said Anker, and against said Mining Company Nederland, for one hundred and forty thousand dollars ($140,000).

Fifth. That upon the 6th day of January, A. D. 1876, Hiram R. Johnson brought suit by attachment in the district court in and for Boulder county, Colorado, against said Mining Company Nederland, which writ of attachment was made returnable to the January term of said district court in and for Boulder county, 1876, and was levied upon the same identical real estate of said company upon which the attachment in the said case of Chaffee against said company was levied.

That upon the 20th day of January, A. D. 1876, the said District Court of Boulder County, rendered a judgment in said case in favor of said Johnson, and against said company, for the sum of two thousand, five hundred and twenty-four, and twenty one-hundredths dollars ($2,524.20).

Sixth. That upon the 5th day of January, 1876, John S. Brown and Junius F. Brown, partners, as J. S. Brown Brothers, brought suit by attachment against the said Mining Company Nederland, in the district court in and for Boulder county, Colorado, to the January term thereof, 1876, which writ was levied upon the identical real estate and personal property of

said company, which was seized under the writ of attachment in the case of Chaffee against said company.

That upon the 3d day of August, A. D. 1876, the said district court rendered judgment in favor of said Brown Bros. in said cause, and against said company for the sum of one thousand and sixteen dollars ($1,016).

Seventh. That at the time of the issuing of said respective writs of attachment, they were duly served and levied upon the real estate and personal property of said company, and the levy and seizure was properly indorsed on each writ, and the proper certificates of levy in each case were filed and recorded in the office of the clerk and recorder of Boulder county, and the personal property was seized and held by the sheriff thereof; that personal service was had upon said company in each and all of the foregoing cases, and that the estate of the said company was liable to attachment when so served.

Eighth. That all the foregoing judgments, viz: that of George C. Corning, Anker & Shaffenburg, Moses Anker, Hiram R. Johnson and Brown Bros., have all been properly assigned to said Chaffee, who is now the owner thereof; that the assignment of each judgment was made prior to September, 1877.

Ninth. That each and all of said judgments now remain in full force and effect, and in no way or manner paid or satisfied.

Tenth. That upon the 6th day of April, 1876, Sible Speelman sued the said Mining Company Nederland, in an action of assumpsit in the district court in and for Gilpin county, Colorado, and brought said suit to the May term thereof, 1876, and upon the 4th day of May, 1876, it being the third day of said term, the said company appeared in said cause, and filed its plea of general issue, and afterwards and upon the 4th day of May, 1876, judgment was rendered in said cause in favor of said Speelman, and against said company, for fifty-three thousand ($53,000) dollars, which judgment is still in force and effect, and in no way satisfied or paid.

Eleventh. That upon the 20th day of April, 1876, an execution was issued upon the said Corning judgment, and delivered to the sheriff of Boulder county, and was indorsed as received by him the same day, but nothing was done under the same; and upon the 12th day of May, 1876, it was returned by said sheriff with the following indorsement: "I hereby certify that I return this execution by order of the plaintiff without having made any money thereon, and entirely unsatisfied. (Signed) C. N. Hockaday, sheriff of Boulder county."

Twelfth. That upon the 12th day of September, 1876, an *alias* execution was issued in the case of Corning against said Mining Company Nederland, and on said judgment, and received by the sheriff of Boulder county on that day.

And upon the 12th day of September, 1876, said sheriff made levy of said writ upon the real estate attached in said suit.

And afterwards, the following indorsement was made by said sheriff upon said execution, to-wit: "I hereby certify that I returned the within writ by order of the plaintiff's attorney, unsatisfied; also, that I have held the within writ until this day for costs; but the costs now having been paid, I now return the same as per order.

"Done this 4th day of June, 1877; signed, C. N. Hockaday, Sheriff." That nothing more was done under the said execution.

Thirteenth. That upon the 11th day of September, 1876, an execution was issued by the clerk of the said district court in and for Boulder county, on the judgment so as aforesaid, given in favor of said Jerome B. Chaffee, and against said Mining Company Nederland, which writ was delivered to the sheriff of said Boulder county on the day of its issuance; and upon the same day it was levied upon the real and personal estate of said company, which was attached under said writ of attachment.

That afterwards the sheriff of Boulder county made the following indorsement on said writ: "I hereby certify that I

return the within writ by order of the plaintiff's attorney, unsatisfied; also certify that I have held the within writ until this date for costs; and the costs having been paid in full by plaintiff, I now return the same as per order.

" Done this 4th day of June, 1877. Signed, C. N. Hockaday, Sheriff." That nothing further has been done under said execution.

Fourteenth. That upon the 15th day of September, 1876, an execution was issued by the clerk of the district court of said Boulder county in said case of J. S. Brown Bros. against said Mining Company Nederland, on the judgment so as aforesaid given in that case; which writ was delivered to the sheriff the same day, and upon that day the sheriff of. Boulder county levied the same upon the real estate only of the said company attached in said suit; that nothing further was done under said execution, until afterwards the sheriff of Boulder county made the following indorsement upon the same:

" I hereby certify that I returned the within writ by order of the plaintiff's attorney, unsatisfied; also certify that I have held the within writ until this day for costs; but the costs having now been paid in full, I now return the same as per order.

" Done this 4th day of June, 1877. Signed, C. N. Hockaday, Sheriff."

Fifteenth. That afterwards, and upon the 11th day of September, 1876, an execution was issued out of the district court by the clerk thereof, in the case of Anker & Shaffenburg, upon the judgment so as aforesaid rendered in their favor and against the Mining Company Nederland, which execution was delivered to the sheriff of Boulder county on the day of its issuance, and he levied the same upon the real estate and personal property of said Mining Company Nederland, which was attached in that suit.

That nothing further was done under said execution, except the sheriff of said county afterwards made the following indorsement thereon:

" I hereby certify that I returned the within writ, by order

of the plaintiff's attorney, unsatisfied; also certify that I have held the within writ until this date for costs, but the costs now having been paid in full by plaintiff, I now return the same as per order. Done this, the 4th day of June, 1877. Signed, C. N. Hockaday, Sheriff."

Sixteenth.  That upon the 25th day of March, 1876, an execution was issued by the clerk of said district court in and for the county of Boulder, upon the judgment of Hiram R. Johnson against said Mining Company Nederland, and delivered to the sheriff the same day, who levied the same upon certain personal property not attached under the writ of attachment in the case wherein the execution was issued, and such personal property was sold, and brought some five hundred dollars, which was indorsed upon the execution.

And afterwards, and upon the 1st day of September, 1876, said sheriff returned said execution, unsatisfied as to the sum of twenty-two hundred seventy-nine dollars, having made the sum of four hundred twenty-one dollars only upon the same. Signed, " C. N. Hockaday, Sheriff."

Seventeenth.  That on or about the first day of November, 1875, one James Pippin filed his petition against said company for a mechanic's and miner's lien in the district court in and for Boulder county, and summons was issued thereon returnable to the January term thereof, 1876, for himself and others, which petition covered all the real estate of the said Mining Company Nederland in said State of Colorado, which included all of the identical real estate attached under these several writs of attachment issued in the names of said Corning, Chaffee, Anker and Shaffenburg, Anker alone, Brown Brothers, and Johnson, against said company; that such proceedings were had under the said petition for lien; that upon the 21st day of January, 1876, in the district court in and for Boulder county, a decree was rendered on said petition in favor of said Pippin and against said Mining Company Nederland, in the sum of twenty-three thousand dollars ($23,000).

That the said attachment suits mentioned, and each and

every of them, were made subservient to and subject to the said lien. That upon the 15th day of September, 1876, the master in chancery of the said court sold said real estate under the said decree for lien in said lien suit, and the same was bid off by said Chaffee, and he received a master's deed therefor.

Eighteenth. That upon the 29th day of December, 1877, one Sible Speelman caused an execution to issue from the district court in and for Gilpin county, directed to the sheriff of Boulder county, on said judgment, against said Mining Company Nederland, so as aforesaid rendered in May, 1876.

The sheriff, on the reception of said execution, proceeded to levy the same upon all the personal property of said company which was attached under the respective writs of attachment issued and sued out as above set forth, and upon the 28th day of January, 1878, the sheriff sold the said personal property described in the complaint, for the sum of $2,200, and the same was sold to said Speelman.

That on the 26th day of January, 1878, executions were again issued in the cases of said Jerome B. Chaffee against said company; Moses Anker against said company; Anker & Shaffenburg against said company, and in the name of Brown Bros. against said company, and the name of Hiram R. Johnson against said company, in their respective attachment suits above named. And the sale of this identical personal property so as above attached, took place under said respective executions, and the property was bid off by Jerome B. Chaffee for the sum of $2,200; that the said personal property so sold is of the value of $2,200, and that the plaintiff demanded this property of the defendant before suit was brought.

Eighteenth. Upon the foregoing facts, who has the better title to said property, said Chaffee or said Speelman?

Nineteenth. It is further agreed and stipulated, that the above is all the evidence in the case, and these facts may be considered by the court, and this stipulation as to those facts shall be taken and deemed by the court as a part of the record

in this case, without any bill of exceptions; and in case either party desires to appeal this case to the Supreme Court, they shall have the right to do so, by simply giving bond for the costs which may accrue.

Twentieth. That for the purpose of this suit, the returns of the sheriff upon the respective executions above set forth are to be treated as true; and the value of the personal property is fixed at $2,200 for the purpose of this suit only.

(Signed):  LEWIS C. ROCKWELL,
Attorney for plaintiff.

(Signed):  THOMAS GEORGE,
Attorney for defendant."

.From this record it appears that liens were secured upon the property by attachment in all the suits, except that of Speelman, prior to the acquisition of any lien by the latter.

But it is contended by appellant that these prior liens were abandoned and lost to appellee by laches on his part, and by conduct amounting to a fraud in law as against the rights of the appellant.

In the cases of Corning and Johnson, the writs were not levied upon the personal property in question, and hence need not be considered as affecting the questions before us.

After judgments in the cases of Chaffee, Shaffenburg & Anker and Brown Bros., executions were issued in those cases, and the writs were levied upon the personal property in question in September, 1876.

In June, 1877, these writs were all returned on the same day by order of the plaintiffs; in each " unsatisfied."

It is to be observed that the returns were not *nulla bona*, and, indeed, such a return could not truthfully have been made, since property had been seized under all of the writs. Obviously these returns at the instance of the plaintiff were for the purpose of delaying a sale of the property taken in execution. These executions were returnable in ninety days, but were not, in fact, returned for nearly nine months, and were

then returned in the manner we have seen. Such a return, after the property had been levied upon nearly nine months before, must be taken as a release of the liens acquired by the previous attachments, as well as the executions and levy thereunder, so far at least as respects any junior liens.

When in a suit by attachment the plaintiff obtains a judgment which by existing law is a lien upon the property attached, the lien of the attachment becomes merged in that of the judgment, and the only effect thereafter of the attachment lien upon the property is to preserve the priority thereby acquired, and this priority is maintained and enforced under the judgment by virtue of the execution issued thereon. As the office of an attachment is to seize and hold property until it can be subjected to execution, its lien is barren of beneficial results to the plaintiff unless he obtain judgment, and thereupon proceeds to subject the property to sale under execution. And if through neglect of the plaintiff to subject the property to execution, the lien of the judgment be lost, that of the attachment falls with it. Drake on Attachment, sections 224 and 228.

It would seem to follow upon principle that in cases of attachment against personal property, after judgment and execution issued therein, the subsisting lien of the attachment merges in that of the execution, in the same manner that an attachment lien upon real property merges in the lien of the judgment when obtained (*Bagley* v. *Ward*, 37 Cal. 121); and hence the same degree of diligence is required to preserve the priority of the lien as is required in cases of executions issued upon ordinary judgments without attachment.

It is scarcely necessary to observe that a different rule of law, regulated by statute, governs in the case of liens upon real estate, where the judgment itself constitutes the lien, which becomes dormant only when it expires by the limitation imposed by statute; and until then the plaintiff may enforce his lien without subordinating it to that of junior judgments.

In the case of attachment of personal property, it is incum-

bent upon the attaching creditor to diligently prosecute his suit to judgment, and within a reasonable time exercise his right of sale in good faith with respect to other creditors, as well as the defendant.

The only proper office and use of an execution is to enforce the collection of a debt, and not to create a security. *Burleigh* v. *Piper*, Sup. Ct. Iowa, Oct. 7, 1879, 9 Cent. Law Jour. 347. If the creditor seeks to convert it into a mere security, or to prevent other creditors from subjecting the property to the satisfaction of their claims, such conduct is to be regarded as fraudulent in law, so as to render the property liable to subsequent liens.

A direction by the execution creditor not to levy, or not to sell, is evidence *prima facie* that the writ is being used as a mere security. Freeman on Executions, section 271. Measured by these rules and principles we must hold that the priority of the liens in the cases above named were lost to the appellee and became postponed to the junior liens of the appellant.

This view disposes of all the Chaffee judgments except one, so far as regards the main question, and narrows the contest down to the question of priority between the original execution issued upon the Anker judgment on the one hand, and the execution issued upon the judgment of appellant on the other hand.

It is contended against the validity of the Anker lien that it became impaired by reason of " the great delay on the Anker judgment, interpreted by the plaintiff's conduct in withdrawing the execution on his own judgment, and neglecting to issue one on this," for an unreasonable length of time after judgment.

The stipulated facts show that the attachment writ in the Anker suit was returnable to the January term, 1876, and that " said case was continued from term to term until the February term, 1877, of said court."

We are not to presume that the case was continued without

17

good cause. A contrary presumption, if any, must arise. It cannot be interpreted to the prejudice of the plaintiff in the light merely of the conduct of other plaintiffs who did not so continue their own cases.

What is a reasonable time within which the execution should in such case be issued after judgment? Upon this question the court below found that any time within a year from the rendition of judgment was a reasonable time. The Anker judgment was rendered February 9, 1877, an execution issued thereon January 26, 1878, and clearly within the year. The decisions cited from other States requiring a shorter time are under statutes prescribing such period.

We have found no decision fixing a period outside of a statutory rule. The case of *Van Lean* v. *Kline*, 10 Johns, 180, cited by appellant's counsel for a rule at common law, makes no reference to a common law rule, but on the contrary, cites a case from a neighboring State in which the period was fixed by statute. Under the law, as it stood when these proceedings were begun, it is provided that the plaintiff in attachment "having obtained judgment," may thereupon take execution for the same according to law, as provided in other cases of debt. All the estate attached and not replevied, shall be sold for and towards satisfying the plaintiff's judgment in the same manner as such property is required to be when taken in execution on a writ of *fieri facias*. R. S. Chap. VI, section 15. Neither the General Laws nor the Code subsequently enacted, prescribe any different mode of procedure. In order to preserve a judgment lien against real estate, it is provided by our statute that execution be issued at any time within one year after judgment rendered. As to judgment liens upon personal property, no different rule has been prescribed. In the absence, therefore, of any statutory rule, by analogy to the rule referred to respecting executions against real property, and in the absence of fraud or *mala fides* on the part of the judgment creditor, we regard as reasonable and correct the rule laid down by the court below. Upon the statement of facts we cannot say

that there appears to have been fraudulent or unreasonable delay in prosecuting to judgment, or in proceeding to execute the same on the part of the plaintiff in the Anker case. On the other hand, from the same statement of facts it does not appear that any execution was taken out by appellant until more than nineteen months after the rendition of his judgment.

We are inclined to believe that a much shorter period than one year in which execution should be taken out upon a judgment where personal property has been attached, would in most cases best subserve the ends of justice with respect to all parties affected by the judgment, but this is a matter for legislative, and not judicial authority, to determine. Some time must of necessity be allowed in which to take out execution after judgment, and were we without any guide whatever as to a reasonable time save the statutes of other States, we might well say that a much less time than one year was such reasonable time. But since the only guide our own law has furnished—that respecting judgment liens upon real estate—has doubtless been to a certain extent relied upon in practice for many years, we think it would savor of trenching upon the province of the legislature, should this court altogether ignore that guide, even with the latitude it allows, and fix an arbitrary limit, without a single rule to measure the proper boundary between one day and three hundred and sixty-five days.

The only other question to be examined is that relating to the character and effect of the sale of the property under which the appellant claims title.

It is insisted by counsel that, even allowing the sale to have been made under a junior lien, yet the title passed thereby to the appellant as purchaser.

It is doubtless true, under the authorities, that when the same officer holds more than one writ, differing in priority, he may sell under a junior writ; and if he does this, the property cannot, merely under the senior writ, be taken from the purchaser. In such case, however, the proceeds of the sale must be applied to the writ having the prior lien. Freeman on Executions,

Sec. 196; *Rogers* v. *Dickey*, 1 Gilm. 643. But in order to pass title to the purchaser in such case, the sale must be fully consummated, the money paid and the property delivered to the purchaser. Unless he fully complies with his bid and the terms which such bid imposes, or offers so to do, he acquires no right to the property, and can maintain no action or proceeding in relation thereto. See Freeman on Executions, Sec. 300, and cases cited. To this rule is the exception, that if the officer surrenders the property to the purchaser, or otherwise treats the sale as consummated, the officer becomes responsible to the plaintiff for the amount of the bid. *Ibid.*

This is a suit in replevin, to sustain which the plaintiff below proves that he purchased the property at a sale upon the Anker judgment, under which, by virtue of his execution thereon, which related back to the date of the attachment levy, he had, as we have shown, a prior lien upon the property.

A case is thus made *prima facie.* To overcome this, it was incumbent on the defendant to establish not only that the property was sold under his writ prior to the sale to the plaintiff (which was done), but that the sale was consummated by his paying the amount of his bid, or offering to do so, or that by delivery of the property to him the officer treated the sale to him as complete. Proof of such a state of facts is not supplied by showing that he owned the judgment under which the sale was made, and that it was greater in amount than the amount of his bid.

A purchaser at execution sale, under his own execution, will not ordinarily be required to pay over the money to the officer, further than the costs of others, but may receipt the writ, if there be no other writ in the officer's hands claiming priority or contribution. But if there be a dispute about the application or the apportionment of the proceeds of sale, in case of more than one writ, then the officer may refuse to deliver the property to the plaintiff so purchasing without payment, or may sell again. Rorer on Judicial Sales, Secs. 1040, 1043.

In this case the appellant was a purchaser with notice of

the prior lien, and in order to be entitled to receive and retain the property, he should have paid the amount of his bid, since the plaintiff holding the prior lien was entitled to the proceeds of sale. Otherwise, the officer should have so treated the sale as to have made himself liable to said prior lienor.

The record furnishes no such evidence on the part of defendant below. On the contrary, the fact of a resale to plaintiff furnishes some ground for the conclusion that the officer did not treat the first sale as consummated, but retained possession and control of the property for resale, as he had a right to do, if the first purchaser failed to pay or tender the amount of his bid. Rorer on Jud. Sales, Secs. 1043, 1066; Freeman on Executions, Sec. 301.

Upon this point the court below, in its written finding, says: "If it be said that the institution of this suit by the plaintiff shows that defendant obtained possession of the property, this is not enough. It must appear that defendant obtained possession from the officer, or otherwise rightfully. The complaint alleges that he took the property from the plaintiff and took it wrongfully. The evidence wholly fails to show that defendant obtained possession prior to the resale of the property. The defendant's sale took place January 28. The stipulation does not show the precise date of the sale to plaintiff, but it could not have occurred prior to February 5, since his executions were issued January 26, and ten days, the shortest period which the law requires property to be advertised, carries the date up to February 5. The complaint alleges that the defendant took the property from plaintiff's possession on the 11th day of February. The answer only denies that on the 11th day of February the defendant wrongfully took the property from the possession of the plaintiff, and avers that on that day, and prior thereto, the defendant was the owner of the property. Defendant could acquire no rights by possession taken from the plaintiff against his consent after a sale to plaintiff, and certainly not without payment of his bid to the officer prior to the resale."

We think this view correct. For aught that appears, the defendant may have first acquired possession of the property subsequent to the resale to plaintiff. The evidence fails to establish, as a sufficient defense, that he acquired such possession rightfully, as against the plaintiff. The questions presented in this case we conceive to be important, and not without difficulty in determining, but upon a careful examination of the case in detail, we are satisfied that the findings of the court below are without error, and the judgment will therefore be affirmed.

*Judgment affirmed.*