# CASES AT LAW AND IN CHANCERY

## DETERMINED IN THE

# SUPREME COURT OF THE STATE OF COLORADO.

## OCTOBER TERM, 1888.

### WILLIAMS, SHERIFF, V. MELLOR ET AL.

1. TRIAL — INSTRUCTIONS — MATTERS NOT IN EVIDENCE.—Where there is no evidence of instructions, or of an understanding on delivery of an execution to the sheriff, that a levy should be delayed, except the omission to make a levy for twenty days, and the testimony of the execution debtor to propositions for further time, which were not accepted, it is error, in replevin by mortgagees for goods levied on under the execution, to submit to the jury the question whether there were such instructions or understanding.

2. EXECUTION — LIEN — DELIVERY TO SHERIFF — PRIORITY.— The lien of an execution is prior to that of a chattel mortgage which is recorded, and possession under which is delivered after the delivery of the execution to the sheriff, though before its levy.

3. APPEAL — REVIEW — OBJECTIONS NOT MADE BELOW.— In replevin against a sheriff who justifies under an execution, his failure to plead the judgment on which the execution issued cannot be taken advantage of on appeal; no objection having been made below, and the judgment having been proved.

*Error to District Court of Gilpin County.*

REPLEVIN by John Mellor, John Johnson and Samuel B. Newell against Richard B. Williams, sheriff of Gilpin

VOL. XII—1

county. Judgment for plaintiffs, and defendant appeals. The facts are stated in the opinion.

Mr. ALVIN MARSH, for plaintiff in error.

Messrs. TELLER & ORAHOOD, for defendants in error.

MR. JUSTICE GERRY delivered the opinion of the court.

This is an action of replevin brought in the district court of Gilpin county, the defendants in error being the plaintiffs in the court below. On the 21st day of June, 1884, an execution issued out of the county court of Gilpin county upon a judgment rendered in said court in favor of Morris Thomas and against one Samuel Walter. The writ was delivered to the sheriff at 2 o'clock P. M. of said 21st day of June. On the same day, at 4:15 o'clock P. M., was filed for record a chattel mortgage, dated June 21, 1884, from said Samuel Walter to defendants in error, thereby conveying to them certain goods and chattels then in possession of said Walter, and specifically described in said mortgage, to secure the payment of a certain promissory note in the sum of $500, made and delivered by said Walter to defendants in error, and payable to their order six months after date.

Defendants in error took possession of the goods described in said mortgage, in pursuance of the terms thereof, June 26, 1884, and advertised the same goods for sale on the 11th day of July, 1884. On the said 11th day of July the plaintiff in error, the then sheriff of said county, levied said execution upon said goods and chattels as the property of said Samuel Walter; and on the same day, under the writ of replevin in this case, the defendants in error took the said goods and chattels from the possession of the sheriff, and proceeded with the sale under the said mortgage.

The complaint in this case contains the usual allegations provided for by the code in actions of replevin.

The defendant in his answer admits demand; denies that the plaintiffs were entitled to the chattels in controversy; and justifies as sheriff under the said writ of execution. For a further answer he alleged that the said chattel mortgage was fraudulent and void as against creditors, for the reason that said mortgage was made upon a stock of wares and merchandise belonging to the mortgagor, and which he was permitted to retain in his possession, and dispose of in the usual course of trade and business, in like manner as before the execution of said mortgage; and that said mortgage, by its terms, embraced all accessions and additions that might from time to time be made to said stock.

The plaintiffs, in their replication, *inter alia*, deny defendant's right to the possession of the goods and chattels under his levy and by virtue of the execution issued in favor of Morris Thomas and against the goods and chattels of Samuel Walter; deny, upon information and belief, that defendant had a valid execution, or that he took possession lawfully of said goods and chattels; allege that Samuel Walter, on the 20th day of December, 1883, gave his promissory note to Hanington and Mellor for $650, payable six months after date, with interest at one and one-half per cent. per month, and secured said note by giving a chattel mortgage of same date upon the said stock of goods, together with all additions that might be made thereto by the mortgagor; that Hanington and Mellor transferred said note and mortgage to the plaintiffs; that on the 21st day of June, 1884, Samuel Walter gave plaintiffs a renewal note for the unpaid balance due on the note of December, 1883, in the sum of $500, payable six months after date, and secured the same by giving another chattel mortgage in lieu of the mortgage of December 20th on his said stock of goods, together with all accessions that might be made thereto by said mortgagor, and that said mortgage was filed for record in the recorder's office of Gilpin county at 4:15 o'clock

P. M., June 21, 1884; deny that said mortgage was fraudulent, and that said Walter was allowed to retail the goods mortgaged; and allege, upon information and belief, that the defendant was instructed by the said Morris Thomas, the judgment creditor, not to levy the said execution until July 10, 1884; and that by reason thereof the said execution became dormant and void as against these plaintiffs.

On the trial of this cause in the court below a verdict was found by the jury in favor of the plaintiffs, and judgment was rendered thereon.   Numerous errors are assigned in this case, the first being that the court erred in giving instructions Nos. 1 and 2 in behalf of the plaintiffs.   The said instructions are in the following language: "The court instructs the jury that the only proper office of an execution is to enforce the collection of a debt, not to create a security.   If you find from the evidence that the execution held by the defendant Williams, as sheriff, against the property of Samuel Walter, was not levied upon the property of said Walter as soon after it came to his hands as could reasonably have been done under the circumstances, as shown by the evidence, and that the same was not levied by reason of any understanding, express or implied, with Morris Thomas, the plaintiff in the execution, or his attorney, or if the same was not levied by direction of said Thomas or his attorney before possession of property was taken by plaintiffs, then your verdict should be for plaintiffs; unless you find that said mortgage mentioned in these instructions was given and received with the intent to defraud the creditors of said Walter."

"If you find from the evidence there was a direction or instruction by Morris Thomas or his attorney to defendant not to levy the execution in the suit of Morris Thomas against Samuel Walter until further orders or direction, then such execution had no force or effect to create a lien on the property of said Walter while it was

so held under such direction or instruction. Such direction or instruction need not be proved by direct or positive words. You can consider all the circumstances and acts of the parties relating thereto, as shown by the testimony, and, if satisfied therefrom that there were such directions or instructions or understanding between the parties, then such execution created no lien whatever on the property of Walter (from the time of such direction, instruction or understanding)."

We are of the opinion that these instructions, which under some circumstances may be a correct exposition of the law, yet in this case were liable to mislead the jury. The validity of the judgment, and the execution issued thereon, is not called in question in the argument, and it is but fair to assume that the same are regular. The execution came into the hands of the officer, Williams, on the 21st day of June, 1884, at 2 o'clock P. M. of said day. On the same day, at 4:15 o'clock, the chattel mortgage in question was filed for record. It appears from the record that prior to the 21st day of June, 1884, other mortgages had been executed and delivered by the said Walter to the firm of Hanington & Mellor, and that the note which the said last-named chattel mortgage was given to secure was assigned by said firm to J. Mellor & Co., the defendants in error; that on or before the 21st day of June, 1884, Walter paid the interest and $150 on the principal of said note, and then executed and delivered the note and chattel mortgage in controversy in this case.

The past transactions between these parties are immaterial in this connection. The *bona fides* of the debt, as between the parties, is not called in question. Neither is there any question that Walter intended to give, and the defendants in error intended to take, security for their debt on the property described in the complaint. It is not the existence of the debt and the *bona fides* of the transaction which is the proper subject of investiga-

tion. The real issue in this case is the validity and priority of the liens as between the parties hereto.

When the execution in question came into the hands of the plaintiff in error, it became a lien upon the chattels of the said Walter; and a subsequent mortgagee of the said Walter would take subject to the existence of the lien thereon, unless the judgment creditor, Thomas, by some act of his, lost or waived his priority of lien. It is a well-settled principle of the law that a judgment creditor may waive or lose his priority of lien by refusal to enforce the same, thereby simply holding the lien as security for the collection of his debt.

Our statute in regard to executions is adopted from the state of Illinois. Our section 1846, General Statutes, is substantially the same as sections 8 and 9, page 862, Cothren's Revised Statutes of Illinois. This law was passed upon by the supreme court of Illinois in the case of *Gilmore v. Davis*, 84 Ill. 487. An execution was issued in October, and placed in the hands of the sheriff, who was to hold the execution for the present, and make no levy, but was instructed by the attorney, if the execution was not paid before it expired, to make a levy; and a month afterwards, and while the execution still had two months to run, the sheriff was directed to make a levy, which he did. In the meantime another execution, on a judgment obtained after the issue of the first execution to the sheriff, was levied upon the personal property of the judgment debtor; and the court held that the first execution, by reason of such instruction to the sheriff, was no lien whatever upon the property, and that the levy under the subsequent execution was good. In this opinion the court said: "We believe the doctrine to be, as the object of an execution is to obtain satisfaction of the judgment on which it issues, on its delivery to the proper officer it gives to the creditor a priority, because the law imposes the duty upon the officer to execute it without delay. Any act of the creditors, therefore, di-

verting the execution from this purpose, renders it inoperative against other creditors, and clothes them with priority. A delivery of such a writ to a sheriff, instructing him at the same time to do nothing under it, is really no delivery, and confers no rights upon the creditor. If a plaintiff in execution instructs the sheriff to make no levy until he gives him further orders, or until another day, it follows, if in the meantime an execution comes to the hands of an officer with instructions to proceed, and he actually does proceed and make a levy, taking the property into his possession, this second execution is and should be deemed first in order; and the same is the rule if the direction is not to proceed to a levy unless urged by junior executions." Several cases are referred to by the court in closing the opinion. In a quotation from *Berry v. Smith*, 3 Wash. C. C. 60, it said: "No distinction is made between a suspension for one day, or one or more months. The order of suspension deprives the act of the officer in pursuance of it of all its force and effect until it is restored by a countermand, and if a second execution is taken out and levied the former must be postponed."

This decision and the cases referred to therein are in accord with the decision of our own supreme court. *Speelman v. Chaffee*, 5 Colo. 247–257. On the latter page the court says: "The only proper office and use of an execution is to enforce the collection of a debt, not to create a security;" referring to *Burleigh v. Piper*, 51 Iowa, 649. And again: "A direction of the execution creditor not to levy or not to sell is evidence, *prima facie*, that the writ is being used as a mere security."

While the doctrine is thus broadly laid down that a plaintiff in execution may waive or lose his priority of lien, yet he cannot do this without some fault on his part. He is not liable for the ordinary neglect of an officer to whom he intrusts his process. *Russell v. Gibbs*,

5 Cow. 390; *Doty v. Turner,* 8 Johns. 20; *Leach v. Williams,* 8 Ala. 759.

When an officer holds a process for a long period of time without enforcing the same, the presumption arises that he held it by direction of the plaintiff. Thus, in Ohio, a stallion levied upon September 11, 1857, was left in possession of the defendant, who sold it November 3, 1858. The execution was held to be dormant as against the purchaser, for it was in the power of the plaintiff to have compelled the sheriff to make a sale. *Acton v. Knowles,* 14 Ohio St. 18. A similar doctrine was announced in Kentucky, where a sale of lands was delayed seventeen months, and in another case for three years, and the court held that the lien became dormant. *Owens v. Patteson,* 6 B. Mon. 489; *Bank v. Berry,* 2 Bush, 236.

But where there has been no considerable delay in the enforcement of an execution in the hands of an officer, then it must appear that the plaintiff in execution did some act or gave some directions which prevented or influenced the officer not to make the levy. He must be an active, not a passive, factor in securing such delay. The record shows that but little evidence was introduced which would have any bearing on this question. Only one witness, Samuel Walter, the judgment debtor and mortgagor of the goods in question, was examined on this point. He testified substantially that on the 26th day of June, 1884, the day defendant took possession of the mortgaged chattels, he was informed by the attorney of Morris Thomas that he (Thomas) "was in town, and was on the war path." Later in the day the said Thomas and Walter met, and the former upbraided the latter for not paying him, accused him of bad faith, and demanded a settlement of the judgment in full. In the language of the witness, he says: "It is got to this, that I am going to see whether I have got $500 there or not. If I have got it, I want it; if I have not, I will see the rea-

son why," or something to that effect. In this conversation Walter made overtures for time, and some amicable settlement; offered to pay $50 per month until the judgment was satisfied, which offer was rejected. Thomas finally proposed that if Walter would pay him $250, nearly one-half of the amount of the judgment, he would give him time on the balance. Walter said he would see Newell, who held an interest in the note secured by the mortgage, and ascertain what could be done. Immediately after this conversation Walter visited the attorney of the defendants in error, and surrendered to the mortgagee the possession of the mortgaged chattels. This proposition made by Thomas was not accepted. The minds of the two men never met in accord on the same. The entire conversation showed that Thomas felt aggrieved; was demanding the immediate payment of his money; and the only thing which could be tortured into an acquiescence on his part in the delay of the sheriff in not making a levy is the said proposition to accept $250 and give time for the payment of the balance — a proposition which was never accepted, and is therefore without effect in this case.

There is not one *scintilla* of proof in the record in this case that any directions of any kind or character whatever were given by said Thomas to the plaintiff in error, and it was not the province of the jury to indulge in speculations on this point. The writ was placed in the hands of the sheriff by direction of the judgment creditor, and the presumption of law arises that the writ was so placed for proper and legal purposes, and to be executed in accordance with the law. To enable the plaintiffs to recover, this presumption must be overthrown by a clear preponderance of all the evidence introduced in the cause. As before suggested, there was practically no evidence upon which to predicate the foregoing instructions, or to warrant a finding thereunder in plaintiff's favor. The instructions are clearly misleading.

They should not have been given, and for this error the judgment must be reversed.

It is urged that the judgment in this case should stand, for the reason that the defendants in error were in the undisputed possession of the chattels in question — having taken possession of the same fifteen days prior to the date of levy, by virtue and in pursuance of the chattel mortgage made by Walter to them; and whatever interest Walter had in such goods could only be reached by the process of garnishment. That position might be correct if no question was raised as to the priority or validity of the mortgage lien in this case. But the execution had been issued, and came into the hands of the officer to execute, before the chattel mortgage was recorded or the property reduced to possession. The mortgagees' possession did not operate to divest the execution lien, or destroy the right of levy and sale to satisfy the judgment. When the execution lien once attaches, it follows the property even in the hands of strangers and the grantees of the judgment debtor; and surely a mortgagee whose title to the property is subject to be defeated by a subsequent performance of the conditions of the mortgage can stand in no better light than a grantee who takes a title absolutely.

It is contended by the defendants in error that the judgment in this case should not be disturbed, for the reason that there was no allegation in the answer that any judgment had been obtained against the defendant in the execution; and, this being the case, the answer presented no defense to the cause of action set forth in the complaint, and that the plaintiffs were entitled to judgment upon the pleadings, and that the court could not consider any proof of judgment, as the same did not follow and support the allegations of the answer. When an officer pleads justification, he must allege and prove the existence and validity of the judgment as well as the writ. This is a well-recognized principle of law, and re-

quires no argument to illustrate the same.  *Deitsch v. Wiggins*, 1 Colo. 299; *Wyatt v. Freeman*, 4 Colo. 14.

The only question for the court to determine is, under the pleadings and evidence as disclosed by the records in this case, can the rule of law above cited be invoked? The answer of defendant alleges that he was holding possession of said goods and chattels by virtue of an execution issued out of the county court of Gilpin county in favor of one Morris Thomas and against one Samuel Walter, which writ came into his hands as sheriff of Gilpin county on the 21st day of June, 1884; and that as such sheriff he levied on said goods and chattels, July 11, 1884, as the property of Samuel Walter, to satisfy said execution, and was holding possession thereof under said levy when plaintiffs replevied.

No issue of law was joined on this answer to test its efficiency. The plaintiffs replied thereto, denying that the defendant made the seizure of the goods by virtue of any valid execution; and in plaintiffs' further reply, wherein they plead affirmatively the waiver of defendant's execution lien, by reason of instructions given the officer having the execution in hand to delay the levy of the same, the existence, though not the validity, of the judgment is admitted.

On the trial of the cause in the court below the defendant offered in evidence the record of this judgment, and, no objections being made to the same, it was by the court admitted in evidence. During the progress of the trial the plaintiffs moved the court to suppress the evidence introduced relating to the judgment, but this motion was based on technical grounds, and not on the variance between the pleadings and the proofs offered, and the court properly overruled the same.

As the record discloses, it is in this court for the first time that the question of a variance between allegations and proofs has been raised. We are of the opinion, in the light of the record above recited, that this cannot be

done. The answer in the first instance was defective, but the defective averments therein contained were aided by the replication and evidence received, without objection.

The judgment will be reversed and the cause remanded.

*Reversed.*